RICHARD ROE & others[1] *vs.* ATTORNEY GENERAL & others.[2]

Suffolk. September 11, 2000. March 8, 2001. - June 28, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Sex offender, Privacy. *Due Process of Law,* Sex offender, Hearing. *Privacy.*

Discussion of this court's previous rulings on challenges to St. 1996, c. 239, § 1 (the precursor of St. 1999, c. 74, § 2) [421-423], and the key provisions of the 1999 statute [423-426].

This court concluded that persons convicted of a sex offense may be required to provide the sex offender registry board with their names and addresses prior to conducting individualized hearings, and that the board may transmit registration data to law enforcement authorities, as these two initial steps of St. 1999, c. 74, § 2, do not offend the due process requirements of art. 12 of the Massachusetts Declaration of Rights and, accordingly, vacated a Superior Court judge's order allowing a preliminary injunction prohibiting the board from requiring sex offenders to register pursuant to the statute without first offering them an individualized, evidentiary hearing to determine whether they currently present a risk to children or other vulnerable persons. [426-442]

COWIN, J., concurred, but would hold that the statute, while facially valid, may be susceptible to "as applied" challenges, which individuals would have standing to bring based on their constitutional right not to have their liberty infringed by indiscriminate identification of them to the police as "sex offenders." [442-445]

MARSHALL, C.J. (with whom IRELAND and CORDY, JJ., joined), concurred to the extent that the court upheld application of St. 1999, c. 74, § 2, to require registration, before a hearing, of those convicted of sexual offenses who pose "a grave threat to children," where the risk of reoffense "is compelling"; and dissented on the grounds that the 1999 statute sweeps too broadly in requiring registration without a hearing — and transmission of detailed registration information to police agencies — by individuals who pose no threat to children or other vulnerable persons and that the statute is retrospective, thus increasing the possibility of its application to persons who pose no threat to those persons who are vulnerable. [445-455]

---

[1]Daniel Doe, Vincent Voe, Phillip Poe, and Larry Loe, individually and on behalf of all other persons similarly situated. Because the named plaintiffs are men, we use the male pronoun throughout this opinion.

[2]Secretary of Public Safety, Criminal History Systems Board, and Sex Offender Registry Board.

CIVIL ACTION commenced in the Superior Court Department on October 19, 1999.

The case was heard by *John M. Xifaras*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Jane L. Willoughby*, Assistant Attorney General (*Peter Sacks*, Assistant Attorney General, with her) for the defendants.

*Carol A. Donovan*, Committee for Public Counsel Services (*Larni S. Levy*, Committee for Public Counsel Services, with her) for the plaintiffs.

SOSMAN, J. This is a direct appeal from an order of a Superior Court judge allowing a preliminary injunction in a class action suit challenging St. 1999, c. 74, § 2, "An Act improving the sex offender registry and establishing civil commitment and community parole supervision for life for sex offenders" (the 1999 statute). The judge determined that the 1999 statute did not provide "sufficient meaningful due process protection," and issued a preliminary injunction prohibiting the defendants from requiring sex offenders to register pursuant to the statute without first offering them an individualized, evidentiary hearing to determine whether they currently present a risk to children or other vulnerable persons.

We conclude that persons convicted of a sex offense may be required to provide the sex offender registry board (board) with their names and addresses prior to conducting individualized hearings, and that the board may transmit registration data[3] to law enforcement authorities, as these two initial steps of the 1999 statute do not offend the due process requirements of art.

---

[3] "[R]egistration data" includes the offender's name, date and place of birth, sex, race, height, weight, eye and hair color, social security number, home and work addresses; a photograph and set of fingerprints; a description of the offense; and any other information that may be useful in identifying the offender or his risk of reoffense. G. L. c. 6, § 178D. Although offenders previously convicted and not currently incarcerated or under supervision are only required to submit their names and home and work addresses, § 178E (*l*), it would appear that the additional information may be obtained by the board from the already existing arrest, incarceration, or parole records of offenders. The board will automatically receive registration data for those offenders currently incarcerated or under supervision from the agency with custody or supervision, § 178E (*a*), (*b*), and for those offenders convicted hereafter from the court that enters the conviction, § 178E (*c*).

12 of the Massachusetts Declaration of Rights.[4] Accordingly, we vacate the Superior Court's order allowing the preliminary injunction.

I

In October, 1999, the plaintiffs filed this action in Superior Court alleging that the due process clause of art. 12 and the Fourteenth Amendment to the United States Constitution entitle them to individualized hearings to determine whether they pose an immediate threat to children or other vulnerable persons before they can be required to register as sex offenders. The plaintiffs further contend that providing law enforcement agencies with a sex offender's registration data, prior to any hearing to determine the offender's current risk of reoffense, similarly violates their constitutional rights of due process.

The plaintiffs sought injunctive relief. The judge ruled that the 1999 statute's requirement of registration without a prior hearing impinges on a protected liberty interest triggering the procedural protection of due process. He concluded that, for all offenders convicted before December 12, 1999, due process required a preregistration hearing to determine the risk posed by the offender.[5] The judge enjoined the defendants from requiring the plaintiffs to comply with the registration provisions of the 1999 statute without first affording them an individualized evidentiary hearing as to their present dangerousness. He denied

---

[4]The judge did not base his conclusion on any provision of the United States Constitution. On appeal, the plaintiffs pursue their claims solely under art. 12 of the Massachusetts Declaration of Rights. Our decision, therefore, analyzes only the State constitutional grounds asserted on appeal.

[5]The judge ruled that the statute provides sufficient due process protection as to those offenders convicted of a sex offense, or adjudicated youthful offenders or juvenile delinquents because of a sex offense, on or after December 12, 1999, and not sentenced to immediate confinement. In those cases, the sentencing judge makes a determination whether the offender poses a public danger or risk of reoffense and, if not, the judge must relieve such offender of the registration requirement. See G. L. c. 6, § 178E (*f*). (However, § 178E [*f*] does not apply to those convicted of certain offenses.) Those offenders sentenced to confinement on or after December 12, 1999, will be notified of the registration requirement and will be afforded an opportunity for a postregistration hearing. §§ 178E (*a*), 178L (1) (*a*). None of the named plaintiffs was convicted on or after December 12, 1999, and the plaintiffs do not challenge that aspect of the judge's order.

the request for preliminary injunctive relief in all other respects.[6] The defendants appealed, and we granted their application for direct appellate review.

We review the grant of a preliminary injunction to determine whether the judge abused his discretion, including whether he applied the proper legal standards. See *Doe* v. *Attorney Gen. (No. 2)*, 425 Mass. 217, 219 (1997) (*Doe [No. 2]*), citing *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980). For the following reasons, we hold that the challenged portions of the 1999 statute do not offend due process, and that the judge's contrary legal conclusion was erroneous.

## II

We have previously ruled on numerous challenges to the 1996 precursor of the present statute. The 1999 statute and the parties' contentions are best understood in the context of the prior statute and our earlier decisions. In 1996, the Senate asked the Justices of this court four specific questions regarding the constitutionality of the then pending sex offender registration bill. See *Opinion of the Justices*, 423 Mass. 1201, 1202-1203 (1996). While answering that certain provisions of the bill did not violate any provisions of the United States or Massachusetts Constitution, we were not asked to opine on the constitutionality of the registration requirements of the bill. See *id.* at 1229.

General Laws c. 6, § 178E, inserted by St. 1996, c. 239, § 1,[7] required sex offenders to register in person at their local police station. Once registered, all registration data concerning a sex offender became available on request to persons age eighteen or older who verified their age and identity. §§ 178I, 178J. The board was to use a three-tier classification system to assess each offender's level of dangerousness and risk of reoffense: level one (low), two (moderate), and three (high). Law

---

[6]The judge refused as premature the request to enjoin the defendants from arresting or prosecuting those who unlawfully fail to register, or to enjoin the defendants from furnishing sex offender information to the Federal Bureau of Investigation (FBI) under the provisions of the 1999 statute and the Wetterling Act, 42 U.S.C. §§ 14071-14072 (2000), to the extent the registration information is collected subsequent to the registration hearings he ordered.

[7]The statute that was enacted was not identical to the bill submitted to the Justices for their opinion.

enforcement officials were to institute a community notification plan, which required police to notify organizations, such as schools and day care centers, about level two and level three offenders who lived or worked in the neighborhood, and to notify individual members of the public about level three offenders whom they were likely to encounter. § 178K. Offenders were not afforded an evidentiary hearing prior to registration or disclosure of registration information to the public.

Multiple lawsuits challenged the validity of certain provisions of the 1996 statute on constitutional and other grounds. *Doe (No. 2)* was the first to reach a constitutional issue.[8] Because of the "absence of any apparent remedial purpose to . . . the general availability of information," *id.* at 222, as to whether an identified person was a sex offender, we held that the notification provisions of § 178I might impose punishment on a person convicted before the effective date of the statute, in violation of the prohibition against double jeopardy and ex post facto laws. *Id.* at 219-220. We thus upheld a preliminary injunction preventing the Commonwealth from making the disclosures called for in § 178I.[9] *Id.* at 222.

Next, in *Doe* v. *Attorney Gen.*, 426 Mass. 136 (1997) (*Doe [No. 3]*), this court held that a level one offender had a constitutionally protected liberty and privacy interest implicated by a registration scheme that resulted in the public disclosure of information about him. *Id.* at 143-144. The "combination" of various features of the registration scheme was what implicated the plaintiff's liberty and privacy interest, the "most important" factor being "the statutory branding of him as a public danger." *Id.* at 144.[10] We concluded that the process due the plaintiff was an opportunity for a hearing to determine whether he must

---

[8]In *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 215-216 (1997) (*Doe [No. 1]*), we concluded that the 1996 statute required the disclosure of certain juvenile court records, despite the confidentiality afforded such records under the delinquency statute, G. L. c. 119, § 60A.

[9]The plaintiff in that case had been convicted twice of open and gross lewdness, which we noted "rank[ed] at or near the bottom in seriousness [of sex offenses]." *Doe* v. *Attorney Gen. (No. 2)*, 425 Mass. 217, 221 n.7 (1997) (*Doe [No. 2]*).

[10]We distinguished the case of *Vaccaro* v. *Vaccaro*, 425 Mass. 153 (1997), in which we held that the availability of an individual's G. L. c. 209A domestic violence record did not violate art. 12, where that record was only available to

register, and, if so, whether his sex offender information should be available on request.

The following year, in *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90 (1998) (*Doe [No. 4]*), we answered two questions. First, we determined that a sex offender's constitutionally required evidentiary hearing should be held before the sex offender registry board. See *id.* at 91. Second, we held that "the appropriateness of an offender's risk classification must be proved by a preponderance of the evidence, and that the board must make specific, written, detailed, and individualized findings to support the appropriateness of each offender's risk classification." *Id.*

Most recently, in *Doe* v. *Attorney Gen.*, 430 Mass. 155, 161 (1999) (*Doe [No. 5]*), we considered whether a hearing was required as a condition of registration for persons convicted of one of the enumerated sex offenses. We stated that "[t]he burden of registration, *combined with public dissemination provisions applicable to all registrants*, triggers liberty and privacy interests . . ." (emphasis added). *Id.* at 163. However, we suggested that the board could, consistent with due process, . promulgate narrowly tailored regulations to identify categories of offenders who posed a grave danger and high risk of reoffense, and that individual preregistration hearings might not be necessary for those categories of offenders. *Id.* at 165.

Following our opinion in *Doe (No. 5)*, the Legislature repealed the 1996 statute and enacted the current 1999 statute, apparently in an effort to comply with our past requirements.

We briefly summarize the key provisions of the new statute. The 1999 statute provides that a person convicted of any of the enumerated sex offenses[11] on or after August 1, 1981, or released on or after August 1, 1981, from confinement, parole, or proba-

---

judges and law enforcement agencies. *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143 n.7 (1997) (*Doe [No. 3]*).

[11]A "[s]ex offense" is defined under the statute as one of the following offenses: indecent assault and battery on a child under fourteen years of age; indecent assault and battery on a mentally retarded person; indecent assault and battery on a person fourteen years of age or older; rape; rape of a child under sixteen years of age with force; rape and abuse of a child; assault with intent to commit rape; assault of a child with intent to commit rape; kidnapping of a child; enticing away a person for prostitution or sexual intercourse;

tion supervision following a conviction of one of these offenses, is a "[s]ex offender." G. L. c. 6, § 178C. The definition of "[s]ex offender" includes a juvenile adjudicated delinquent by reason of a sex offense or a youthful offender who has been convicted of a sex offense.[12] *Id.*

The 1999 statute provides for the appointment by the Governor of a seven-member sex offender registry board. G. L. c. 6, § 178K (1). A sex offender who lives or works in the Commonwealth must register with the board by mail, listing his name, home address, and (if applicable) work address, or his intended home and work addresses.[13] § 178E (*a*)-(*c*), 178E (*g*)-(*h*), 178E (*l*). He must verify this information annually and report any changes to the board.[14] §§ 178F, 178F½. The penalty for a first offense of knowingly failing to register or failing to

drugging persons for sexual intercourse; inducing a minor into prostitution; living off or sharing earnings of a minor prostitute; second and subsequent adjudication or conviction of open and gross lewdness and lascivious behavior, but excluding a first or single adjudication as a juvenile delinquent before August 1, 1992; incestuous marriage or intercourse; disseminating to a minor matter harmful to a minor; posing or exhibiting a child in a state of nudity; dissemination of visual material of a child in a state of nudity or sexual conduct; possession of child pornography; unnatural and lascivious acts with a child under sixteen years of age; aggravated rape; and any attempt to commit any of these offenses or a violation of the laws of another State, the United States, or a military, territorial, or Indian tribal authority. G. L. c. 6, § 178C.

[12]The record indicates that there may be between 13,000 and 16,000 persons in Massachusetts who would come within the definition of "sex offender."

[13]Offenders may be relieved of the registration obligation (1) if the court, within fourteen days of sentencing, determines that a sex offender convicted or adjudicated a youthful offender or juvenile delinquent by reason of a sex offense, on or after December 12, 1999, and not sentenced to immediate confinement, is not dangerous or at risk of reoffense, G. L. c. 6, § 178E (*f*); or (2) if, on the Commonwealth's motion at the time of sentencing, the court finds that the offender is not dangerous or at risk of reoffense. G. L. c. 6, § 178E (*e*). These exceptions to registration apply prospectively only and do not apply to sexually violent predators (persons convicted of or adjudicated juvenile delinquents or youthful offenders because of a sexually violent offense and who suffer from a disorder that makes them likely to engage in predatory sexually violent offenses); those convicted of two or more sex offenses, as defined in 42 U.S.C. § 14071, on different occasions; those convicted of sex offenses involving a child or sexually violent offenses; or those subject to minimum or lifetime registration requirements. G. L. c. 6, §§ 178E (*e*), 178K (2) (*d*).

[14]Certain offenders must verify their information more frequently. Offenders who are homeless or who are determined to be sexually violent predators

notify the board of any changes is from six months to two and one-half years in a house of correction, up to five years in State prison, a $1,000 fine, or both a fine and imprisonment.[15] § 178H (*a*) (1).

The 1999 statute provides for postregistration hearings and mandates the order of priority in which offenders are to be reviewed.[16] G. L. c. 6, §§ 178K (3), 178L. The board is to promulgate guidelines for classifying an offender's level of dangerousness and risk of reoffense and apply those guidelines to assess the risk level of particular offenders. § 178K (1). The board may determine that an offender does not pose a danger or risk of reoffense and relieve him of any further registration requirement. § 178K (2) (*d*).[17] Once an offender receives notice from the board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. § 178L. The board then assigns a final risk classification level: level one (low); level two (moderate); or level three (high). §§ 178K (2), 178L (2). Offenders may seek judicial review pursuant to G. L. c. 30A, § 14, of the board's final classification and registration requirements. § 178M.

Prior to final classification by the board, information concerning offenders is not available to the public, but only to law

must verify their registration data every ninety days. G. L. c. 6, §§ 178F, 178F½.

[15]An offender who lists a homeless shelter as his residence is punishable for a first offense by no more than thirty days in a house of correction. G. L. c. 6, § 178H (*c*).

[16]The board must give priority first to those offenders who were convicted of certain offenses but not sentenced to incarceration for at least ninety days. These offenses include conviction or adjudication of delinquency or as a youthful offender for sex offenses involving a child, sexually violent offenses, or indecent assault and battery on a mentally retarded person. G. L. c. 6, § 178K (3). The board must next give priority to those released from incarceration within the past twelve months; those currently on probation or parole supervision; and those scheduled to be released from incarceration within six months. *Id.*

[17]The board may not relieve an offender of the obligation to register if he is a sexually violent predator; has been convicted of two or more sex offenses (as defined in 42 U.S.C. § 14071) committed on different occasions; has been convicted of a sex offense involving a child or a sexually violent offense and has been registered for less than ten years; or if he is subject to minimum or lifetime registration requirements. G. L. c. 6, § 178K (2) (*d*).

enforcement agencies. G. L. c. 6, §§ 178I, 178J (*c*), 178K (2) (*a*)-(*c*). Public notification depends on an offender's classification level. § 178K (2) (*a*)-(*c*). Persons classified as level two and level three offenders must register each year in person at their local police station, and their registry information is available on request to members of the public over eighteen years of age who state that they are requesting such information for their own protection or for the protection of another person for whom they have responsibility. §§ 178F$^{1}/_{2}$, 178I, 178J, 178K (2) (*b*)-(*c*). Information regarding level three offenders will be disseminated through active community notification. § 178K (2) (*c*).

A person classified as a level one offender must continue to register annually by mail. G. L. c. 6, § 178F. As long as his classification remains at level one, an offender's registry information is available only to law enforcement agencies, not to any member of the public. § 178K (2) (*a*).

The board must maintain a central computerized registry of sex offenders. G. L. c. 6, § 178D. The file on each offender contains the offender's registration data. See note 3, *supra*. The board must "promptly" transmit such data to the Federal Bureau of Investigation (FBI) and to police departments in the municipalities where the offender intends to live and work, and the municipality where the offense occurred. § 178E (*a*)-(*c*), 178E (*g*)-(*j*), 178E (*l*).

### III

The named plaintiffs in the present case include two men convicted of sex offenses in 1978 and 1985, respectively, who are not in custody, on probation, or on parole; one man on probation as a result of a sex offense conviction; and two men currently incarcerated because of sex offenses, one in a house of correction and one in State prison. All the named plaintiffs fall within the definition of sex offender, and they are required or will be required to register under the 1999 statute.

The plaintiffs contend that the automatic registration requirement of the 1999 statute, without providing any prior hearing as to present dangerousness, violates their right to procedural due

process under art. 12.[18] There are two components of the present statutory scheme that occur prior to providing offenders with an opportunity to be heard: (1) an offender is required to mail a form to the board setting forth his name, home address, and work address, and (2) the offender's registration information is made available to law enforcement agencies. The issue, therefore, is whether the procedural due process protections of art. 12 are violated by either or both of these initial steps in the current registration scheme.

Procedural due process protection is triggered when governmental action interferes with liberty interests. See *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976); *Commonwealth* v. *Brown*, 426 Mass. 475, 482 (1998); *Aime* v. *Commonwealth*, 414 Mass. 667, 674-675 (1993). Where there is an interference with a protected liberty interest, the court must consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge, supra.* See *Aime* v. *Commonwealth, supra* at 675 ("the individual interest at stake must be balanced against the nature of the governmental interest and the risk of an erroneous deprivation of liberty or property under the procedures which the State seeks to use"). The requirements of procedural due process are pragmatic and flexible, not rigid or hypertechnical. " 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union, Local 473* v. *McElroy*, 367 U.S. 886, 895 (1961), quoting *Joint Anti-Fascist Refugee Comm.* v. *McGrath*, 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). We now address the two challenged

---

[18]The plaintiffs do not challenge any of the classification procedures, nor do they challenge the ongoing registration obligation that may continue following their hearings. Our decision, therefore, is confined to the constitutionality of the initial registration requirement and its attendant notification of law enforcement.

components of the sex offender registration scheme against these procedural due process requirements.

A. *Registration with the board.* The requirement that a citizen notify a government agency of his current address is, although not in itself particularly burdensome, an imposition on the citizen's liberty. The mere fact that a citizen is being forced to take some action (unconnected with the citizen's own desire to engage in a form of regulated activity) infringes, to at least some extent, on his liberty. *Doe (No. 3), supra* at 149-150 (Fried, J., concurring). The issue, then, is whether that intrusion, now reduced to the minimal requirement of mailing in one's name and address, can be imposed on convicted sex offenders without a prior hearing.

Under the current version of the statute, the board will provide every offender with an opportunity to submit information concerning his risk of reoffense and degree of dangerousness, § 178L (1) (*a*) and (*c*), and, if the offender wishes to challenge either the classification level assigned to him by the board or the board's determination that he must continue to register, the board must provide the offender with an opportunity to be heard as to whether the risk he poses is such that he must continue to register or that public dissemination concerning his status as a sex offender is warranted. § 178L (2). All offenders are entitled to such hearings, even those serious offenders as to whom this court has ruled that public dissemination of information would be lawful without any prior hearing. *Doe (No. 5), supra* at 165. Public dissemination of information concerning offenders who pose a current risk of reoffense is permissible, *id.*, and the board is acting in pursuit of a legitimate governmental purpose when it undertakes to provide hearings to all sex offenders to determine, on an individualized basis, whether an offender does or does not pose such a current risk.

In order to provide offenders with notice and an opportunity to be heard on that important issue, the board needs accurate and current information as to where offenders are so that notice may be accomplished. It would be circular reasoning to hold that the board must give people notice and an opportunity to be heard in order to find out how and where it may effect notice to them. Procedural due process does not require the board to send

out notices of hearings to persons before it may require those persons to cooperate in telling the board where notices should be sent.

For reasons beyond those normally at issue in the provision of notice, the board needs highly accurate, current, and complete information concerning offenders' whereabouts in order to achieve proper notice of the substantive hearings that the Legislature has accorded to all offenders. The board faces an unusual set of concerns with respect to the provision of notice to sex offenders. Sending a notice to the wrong address has risks that the plaintiffs themselves would surely wish to minimize, as a misaddressed notice increases the risk that it will be read by someone other than the intended recipient.[19] Notices returned to the board stamped "addressee unknown" or "forwarding order expired" or some similar notation would lead to additional investigation to locate the offender. By its nature, investigation into someone's whereabouts involves (or at least risks) unintended disclosure of who is looking for the person and why. In most situations involving provision of notice to a person whose whereabouts are unknown, the acceptable final resort is notice by publication. See *Adoption of Holly*, 432 Mass. 680, 686-687 (2000). Here, notice by publication is singularly inapt, as it would disclose to the public the very thing that was not to be disclosed until the offender was given his hearing.

If the board were to send notice but hear nothing back from the offender, the board would proceed based solely on its own assessment of the offender's risk of reoffense with no input from the offender himself, and, based on that unilateral assessment, the board could approve public dissemination of the information it had about that offender. Where the board had

[19]For example, a notice sent to an address that the offender has vacated may well be opened by the current occupant, perhaps out of simple curiosity, or perhaps to find out whether the item is "junk mail" that can be discarded or whether it is sufficiently important to send on to the addressee. Or, if the board were to make any mistakes in matching names with records of addresses, a notice could be sent to someone who has no conviction of any sex offense, but does have a name identical or similar to such an offender. Such a recipient would face an unwanted (albeit temporary) shock, and would also learn that someone else of that name did have a criminal record of some form of sex offense.

made efforts "reasonably calculated to provide actual notice," due process would not impose any requirement that the offender actually receive notice. *Andover* v. *State Fin. Servs., Inc.*, 432 Mass. 571, 574-575 (2000), citing *Tulsa Professional Collection Servs., Inc.* v. *Pope*, 485 U.S. 478, 489-490 (1988). Thus, the board could, consistent with due process, release information about any offender who failed to respond to a form of notice that had been reasonably calculated to provide him with notice. Yet, without having actually received notice, the offender's opportunity to prevent public dissemination would be lost, and there would also be a distinct and disturbing possibility that the board would disseminate inaccurate information about the offender.[20]

Requiring offenders to provide accurate, up-to-date information as to where they are and where they may be reached is vital to the board's work as it seeks to provide offenders with notice of their hearings. The requirement that offenders provide that information minimizes the risk of unintended prehearing disclosures, the risk of unjustified disclosures, and the risk of public dissemination of inaccurate and highly damaging information. It is in everyone's best interests — including the best interests of sex offenders themselves — that the board work from accurate, up to date, and thorough information. The minimally intrusive method of mail-in registration, consisting of the minimum information needed to identify offenders and their

---

[20]This could include the misidentification of someone as a sex offender who was not in fact a sex offender. Among the estimated 13,000 to 16,000 sex offenders subject to the statute, there are surely many whose names are virtually identical to persons with no record of offense at all, and mistakes in identification are bound to occur if the board proceeds without any information from the actual offender. Official records may also be inaccurate in failing to reflect such things as a conviction being reversed on appeal, or incorrectly listing an offense as a sex offense when the actual charge was not a sex offense (e.g., mistakenly coding an assault and battery charge as an indecent assault and battery). Given our concern about the damage to reputation following public disclosure as to someone who is at least an actual sex offender, see *Doe* v. *Attorney Gen.*, 430 Mass. 155, 163 (1999) (*Doe [No. 5]*), we would view it as an even more grave harm if a person innocent of any such offense were publicly misidentified as a sex offender. The board must place a high premium on accuracy if such damage to innocent persons is to be avoided, and such accuracy cannot be achieved without some cooperation from those who have been convicted of sex offenses.

current whereabouts, cannot pragmatically be preceded by notice or hearing.[21] This aspect of the registration scheme does not offend procedural due process.

B. *Dissemination of registration information to law enforcement.* The plaintiffs also contend that the board may not make the information it gathers about an offender available to any other law enforcement agency prior to giving the offender a hearing. They fail, however, to articulate any liberty interest that is infringed by this aspect of the 1999 statute. Absent some infringement of a protected liberty interest, there is no deprivation that would trigger procedural due process concerns.

In *Doe (No. 3)*, this court identified five features of the prior sex offender registration statute that, in combination, led the court to conclude that a liberty and privacy interest was at stake in that former registration scheme: (1) the requirement that the offender register with local police; (2) the public disclosure of personal information about the offender; (3) the potential harm to the offender's earning capacity; (4) the harm to the offender's reputation; and "most important" (5) the "branding" of the offender as a public danger. *Doe (No. 3)*, *supra* at 144. The cur-

---

[21]The plaintiffs also contend that they will be subject to lengthy delays pending notice of their classification levels and hearings, and that the ongoing obligation of annual registration (and notification of any address change) cannot be justified. The present action, however, presents a challenge to the facial validity of the statute. We cannot, on a facial challenge, make speculative assumptions about delays on the part of the board and find the statute unconstitutional based on such assumptions. It remains to be seen how long the board will take to do its work, how many offenders will be relieved of the obligation to register, and how many offenders will seek a hearing to contest the board's initial classification. If, as to some offenders, there turn out to be unreasonable delays, we may then, on an appropriate factual record, address the constitutionality of requiring those offenders to update their registration information.

The statute also requires ongoing verification of the registration address after classification and hearing, even for those offenders classified as low risk (level one) offenders, G. L. c. 6, § 178F, unless the board determines that the offender may be relieved of the registration requirement. G. L. c. 6, § 178K (2) (*d*). Once the board has performed its classification and provided an offender with notice and an opportunity to be heard, it may be difficult to justify any ongoing registration requirement for those persons whose risk of reoffense has been found to be minimal. However, the postclassification aspects of the statute are not before us on the present appeal, and we express no opinion as to the constitutionality of ongoing registration requirements for persons classified as level one.

rent legislation has completely eliminated four of those five factors (including its "most important" factor), as public disclosure and its potential adverse effects (to reputation and earning capacity) no longer flow from the mere fact of registration. Consistent with *Doe (No. 3)*, the current statute provides notice and an opportunity to be heard before any disclosure is made to any member of the public. G. L. c. 6, §§ 178E (*n*), 178I, 178K. Thus, the only factor at issue in *Doe (No. 3)* that is still at issue in the present statute is a portion of the first factor — i.e., police knowledge of the offender's registration.[22]

Nothing in any of the prior *Doe* decisions suggested that any privacy interest was at stake in a statutory scheme involving only that first factor. Rather, in *Doe (No. 3)*, we suggested that police knowledge of the offender's registration would be permissible without any form of hearing or other procedural protection: "The public interest in having that information in the hands of local law enforcement officials may justify the registration requirement in the face of whatever liberty and privacy interests the registration requirement implicates." *Id.* at 146.[23] After making that observation concerning the likely propriety of providing law enforcement with registration information on sex offenders, we ordered that offenders be given a hearing prior to *public* disclosure of that information:

> "*As to the public disclosure* on request . . . of sex offender information, it is contrary to the principle of fundamental fairness that underlies the concept of due process of law to deny the plaintiff a hearing at which the evidence might show that he is not a threat to children and other vulnerable persons whom the act seeks to protect *and that disclosure is not needed* when balanced against the public need to which the sex offender act responded. *Government action unreasonably stigmatizing the plaintiff*

---

[22]The requirement that the offender appear in person at his local police station has been eliminated, thus removing the personal embarrassment involved in any face to face interaction with the police.

[23]We also cited with approval and relied heavily on *Doe v. Poritz*, 142 N.J. 1 (1995), in which the court identified an infringement of a privacy interest from the public disclosure of information about a sex offender, distinguishing those offenders as to whom information would only be provided to law enforcement. See *Doe (No. 3)*, *supra* at 140-142.

*would violate the plaintiff's constitutionally protected rights.*" (Citation omitted; emphasis added.)

*Id.* We expressly distinguished the case of *Vaccaro* v. *Vaccaro*, 425 Mass. 153 (1997), in which we upheld the domestic violence record-keeping system, a system that made data on G. L. c. 209A restraining orders available only to the police and trial court judges. *Doe (No. 3)*, *supra* at 143 n.7.[24] Thus, under *Doe (No. 3)*, what triggered the requirement of notice and an opportunity to be heard was the public disclosure component of the former statute, not the mere knowledge of or notice to law enforcement.

The same was true in *Doe (No. 5)*, where registration itself was automatically coupled with public disclosure. *Doe (No. 5)*, *supra* at 163. Again, we pointed to the New Jersey statute for comparison: "By way of contrast, for example, under the cognate New Jersey law . . . no information is available to the public concerning a person classified as a low or tier one risk. . . . Only law enforcement agencies likely to encounter the registrant receive notification." (Citations omitted.) *Id.* at 163 n.15.

Where the burden of some form of registration can lawfully be imposed, at least to the extent of requiring offenders to provide the board with home and work addresses, nothing in our prior sex offender registry jurisprudence suggests that sharing that limited information with the police implicates any privacy interest that would trigger due process protection. See, e.g., *Murphy* v. *Department of Correction*, 429 Mass. 736, 739 (1999) (persons convicted of crime "have diminished expectation of privacy" in their identity and thus may be required to provide DNA samples to law enforcement); *Landry* v. *Attorney Gen.*, 429 Mass. 336, 350 (1999) (same).

Nor would such a conclusion comport with existing law

---

[24]In *Vaccaro* v. *Vaccaro*, 425 Mass. 153 (1997), we were confronted with a system that kept a record of ex parte orders, even those that were subsequently vacated or voluntarily terminated, and made that record available to law enforcement. What is made available to police under the 1999 statute is the current address and record of persons who have actual convictions of sex offenses. If it does not offend due process to alert police to every unproved (or even withdrawn) accusation of domestic abuse, due process is clearly not violated by alerting police to actual convictions.

concerning the information to which police routinely have access. The fact that one has a prior criminal conviction is not something that is kept secret from or made inaccessible to the police. The Criminal Offender Record Information statute (CORI), G. L. c. 6, §§ 167-178B, limits *public* access to certain information about offenders, but it places no restriction on police access to such information in the performance of police duties. The police come within the definition of "[c]riminal justice agencies," § 167, and the entirety of "[c]riminal offender record information" may be disseminated to "criminal justice agencies," § 172.[25] The only limitation imposed on police access is that the access must be "necessary for the actual performance of the criminal justice duties of criminal justice agencies." *Id.* Nothing in CORI, and nothing in our jurisprudence, suggests that the police must give a person notice and an opportunity to be heard, or that the police must have reason to believe that the person poses some significant risk of reoffense, before the police may check computerized records to see whether a particular person has any prior criminal record.

Indeed, given that there is a legitimate law enforcement interest in ascertaining the whereabouts of persons who do pose a current threat to public safety, *Doe (No. 3)*, *supra* at 142, CORI would allow local police to compile their own list of persons with prior sex offenses located within their jurisdictions. Local police could, if they chose, take the name of every person known to reside within their jurisdiction and search the available computer data bases to find out who in their town had a prior record that might pose a threat to public safety. While this

---

[25]The term "[c]riminal offender record information" is defined as "records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release." G. L. c. 6, § 167. Thus, the information to which the police have access goes far beyond the offender's record of convictions. They have access to police reports and witness statements. They can review information concerning charges that were dismissed or that resulted in acquittal. They can review information concerning an offender's disciplinary history in prison. See *Hawkins* v. *Commissioner of Correction*, 406 Mass. 898, 900 (1990) (prison disciplinary reports and prison classification reports are within definition of "criminal offender record information").

process would be cumbersome in large municipalities, it would be perfectly lawful for the police to make such a check, and it would not invade any privacy interests or require any prior hearing or particularized showing for the police to check the records and data bases that have always been available to them. Nothing in CORI would prevent the police from compiling such information for their own law enforcement purposes.

The contention that police knowledge of a person's prior record invades a privacy interest is also at odds with the fundamental premise that records of conviction are public records that are constitutionally required to be public. See *Globe Newspaper Co.* v. *Fenton*, 819 F. Supp. 89, 100-101 (D. Mass. 1993) (denial of public access to court alphabetical indices of criminal defendants violated First Amendment to the United States Constitution).[26] What the public has a right of access to as a matter of constitutional law, the police surely have access

---

[26]Beyond court records themselves, CORI allows members of the public access to significant amounts of conviction data, depending on the seriousness of the offense (as measured only by the potential or actual punishment imposed) and the amount of time that has elapsed since the offender completed his incarceration, parole, or probation. G. L. c. 6, § 172 (sixth and seventh pars.). Persons seeking records of conviction within those categories do not have to show any need or justification for the information. Others seeking access to the full range of criminal offender record information may make a request to the criminal history systems board, which can permit such access to any agency or individual "where it has been determined that the public interest in disseminating such information to these parties clearly outweighs the interest in security and privacy." *Id.* at 172 (first par.). Nothing in CORI, or in its implementing regulations, 803 Code Mass. Regs. §§ 2.00 et seq. (1995), requires that the person whose records are being requested be given notice or an opportunity to be heard prior to the release of his criminal record. Other parts of CORI allow, or in some cases mandate, the release of criminal record information concerning employees of particular types of agencies or entities. See G. L. c. 6, § 172C (providers of homemaker, home health care, or companion services to disabled or elderly clients must check criminal record of each potential employee and may check criminal records of all current employees); § 172E (same for long-term care facilities with respect to any employee that provides personal care or treatment to facility residents). See also § 172B (Department of Social Services and Department of Youth Services have access to criminal records for purposes of evaluating adoptive or foster homes); § 172F (office of child care services has access to criminal records for purposes of evaluating residence, facility, program, or child care provider). None of these CORI provisions allowing members of the public and various agencies access to records of criminal convictions has ever been challenged as an unwarranted invasion of privacy or a deprivation that requires notice and

to in order to promote public safety. There is no right of privacy that prevents the police from knowing about a citizen's prior criminal record, no matter how old or minimal that record is and no matter how well a person has rehabilitated himself.

Police knowledge that a person's record of criminal convictions brings him within the statutory definition of "sex offender" does not "brand" the person as "a public danger," (*post* at 453 [Marshall, C.J., concurring in part and dissenting in part]), nor does it attach any "badge of infamy" (*id.*).[27] The reference to "branding" in *Doe (No. 3), supra* at 144, was made with respect to a scheme involving automatic public disclosure of every registrant's status as a "sex offender," reflecting our concern that registrants would suffer public humiliation (and that the public might misunderstand and misuse such information). Registrants are not "branded" when the police access their registration information. The statutory classification does not express to law enforcement any opinion as to an offender's dangerousness — indeed, it expressly recognizes that some persons who have committed such offenses in the past will not pose any current danger and provides that such persons are to be relieved of any obligation to continue registering. The data transmitted to law enforcement includes the underlying registration data, not just the label of "sex of-

an individualized hearing. If an individual has a privacy right in shielding his criminal history from the police in his own town, a right that cannot be infringed without an individualized hearing or the promulgation of regulations, the CORI provisions that allow criminal record access to members of the public and to the various identified agencies and entities would presumably be unconstitutional as well.

[27]Nor, contrary to the dissent (*post* at 450 [Marshall, C.J., concurring in part and dissenting in part]), does transmission of data to law enforcement "force[] an action on the person required to register." The only thing an offender is "forced" to do is to send in his name and address to the board. Whether the information about the offender is or is not shared with law enforcement, nothing further is required of him. Nor does law enforcement access to registration data cause the offender to be "reminded" of his prior offense (*post* at 452). The offender may be so "reminded" at the time he mails in his name and address to the board (which the dissent acknowledges is constitutionally permissible, *post* at 447-448), but nothing about the board's subsequent transmission of information to law enforcement generates any form of "reminder" to the offender. We are also unaware of any precedent supporting the proposition that remembering one's own past deprives one of any form of liberty.

fender," from which the police can see for themselves, for example, that a registrant's sex offenses consist of two convictions of open and gross lewdness that occurred twenty years ago when the registrant was eighteen years old. Even if the statutory classification as a sex offender subject to registration expressed to the police any opinion about a person's current dangerousness (which it does not), the police will simultaneously be given the underlying information that has made the registrant come within the statutory definition. Cf. *Lyons* v. *Globe Newspaper Co.*, 415 Mass. 258, 262, 267 (1993), quoting *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 227-228 (1979), cert. denied, 446 U.S. 935 (1980) (opinion based on disclosed nondefamatory facts not actionable defamation, "no matter how unjustified and unreasonable the opinion may be or how derogatory it is," protecting opinions based on disclosed information "because we trust that the recipient of such opinions will reject ideas which he or she finds unwarranted by the disclosed information"). Nothing in the transmission of that information to law enforcement "brands" the registrant as a "danger," any more than law enforcement access to G. L. c. 209A records "brands" a G. L. c. 209A defendant as a "wife beater." See *Vaccaro* v. *Vaccaro*, 425 Mass. 153 (1997).

Earlier opinions have suggested that it is the combination of the record of conviction with other information — i.e., the convicted person's current address — that would implicate a constitutionally protected privacy interest if publicly disclosed. *Doe (No. 3)*, *supra* at 143, and cases cited. Again, however, we are now dealing solely with police access to the information being compiled, not public access. Where the police already have unfettered access, by other sources, to each item of information about a registrant that the board would be sending to the police, the mere fact that that information has been assembled by the board in a more convenient format does not implicate any constitutionally protected privacy interest.

Here, the only information that the offender would be contributing to that combination of information is his current

home address and (if applicable) work address.[28] The police have access to every conceivable data base from which to locate a person's address. See, e.g., G. L. c. 62C, § 21 (*b*) (18) (confidentiality of tax return information does not extend to "disclosure of the name and address of a person filing any return or document with the commissioner"). Indeed, the plaintiffs argue that the registration requirement is unjustifiable because the board already has access to all the information it needs to locate offenders. One cannot claim simultaneously that law enforcement already has the information but that it infringes a privacy interest for law enforcement to look at the information it has.[29] Police may find offenders' addresses either by tracing an offender's name through the multiple data bases to which they have access or, as discussed above, they may take each name of a person known to reside in their jurisdiction and check each person's criminal record through CORI, through FBI data bases, and through interstate data bases. Police link such information routinely when they are looking for someone, and no one suggests that they may not do so without providing a hearing to the person who is the subject of the data base search.

The proposed construction of an artificial wall to prevent the board from transmitting information to law enforcement also ignores the fact that the police would presumably be allowed to assist the board in improving the accuracy and completeness of the board's own information. For example, if the police were to conduct a record check on a person who was before them for

[28]The other registration information is collected by the board from CORI sources that would be equally accessible to the police.

[29]As discussed above, the need for a high degree of accuracy justifies the minimal imposition on an offender's liberty that is entailed in making him provide the board with current home and work addresses. For most offenders, however, the plaintiffs are correct in their assertion that the government already has this information about them. If the government already has the information and police already have access to that information, it violates no privacy right for the board to share that information with law enforcement. It would be utterly artificial to hold that, if the board's own records show the same address as that provided by the registrant the board may share the record information with the police, but that the board may not share the correct address information in any case where there is a discrepancy between the board's record information about the offender's address and the address that the offender himself provides.

any reason and find that the person had a prior conviction that would make him a sex offender subject to registration, surely the police could check with the board to ascertain whether the person had in fact provided the board with his address.[30] Nothing should prevent the board from responding to such a police inquiry or prevent the police from confirming that the information they have just obtained about the person (e.g., his claimed current address) comports with the information he has provided the board. If privacy interests prevent the police from knowing who has registered, privacy interests would also prevent police from enforcing the registration statute or contributing to the accuracy of the registry's data.

Similarly, at the time the board is looking at an offender's current level of risk, it should be able to get current information about the offender from his local police. For example, if a person with a past child rape conviction claimed before the board that he had stayed away from children in order to prevent any form of relapse, the board should be able to inquire of the offender's local police whether they have any different information (e.g., that he has been coaching youth soccer in the town for the past several years, or that he lives across the street from an elementary school). If the board is to conduct individual hearings as to a person's current dangerousness, it should be able to contact local law enforcement who might be familiar with the offender to see what relevant information they could provide.

Erection of an information barrier between the board and law enforcement would only serve to undermine the efficacy of the registration system. The plaintiffs have not cited a single case from any other jurisdiction in which law enforcement access to such information about registered sex offenders has been blocked for any reason.[31] The police have, or could have if they chose to pursue it through other and more cumbersome means,

---

[30]If for no other reason, the police would be justified in doing so in order to determine whether to charge the person with failure to register. G. L. c. 6, § 178H.

[31]Nor has the dissent cited any such case. The dissent seeks to explain this absence of precedent from other jurisdictions by suggesting that our sex offender registry statute is broader than that in other States. Post at 454-455

information as to any offender's prior record and any offender's current whereabouts. There is no privacy interest at stake in the board's transmitting to the police information to which the

(Marshall, C.J., concurring in part and dissenting in part). The explanation is not convincing. Many States have broad definitions of "sex offender" for purposes of their registration schemes, both in terms of how far back in time they reach and the type of crimes included. See, e.g., Cal. Penal Code §§ 290-290.9 (1999 & Supp. 2001) (covers convictions dating back to 1944 and includes persons convicted of lewd and lascivious acts, lewd or obscene conduct, or indecent exposure); Iowa Code Ann. §§ 692A.1-692A.16 (Supp. 2000) (no time limit for persons convicted of two or more sex offenses, and sex offenses include indecent exposure, rental or sale of pornography, or telephone dissemination of obscene materials); Nev. Rev. Stat. Ann. §§ 179D.350-179D.850 (2000) (covers convictions dating back to 1956 and includes persons convicted of open or gross lewdness or indecent exposure); S.C. Code Ann. §§ 23-3-400 to 23-3-490 (Supp. 2000) (no time limit on date of conviction and includes persons convicted of "peeping" or "voyeurism"). Moreover, of the many cases challenging the constitutionality of sex offender registration schemes, none has even suggested that providing registration information to police would implicate a liberty interest — in other words, there has been no suggestion that dissemination of information to police is permissible only because the statute under consideration is sufficiently narrow.

Instead, cases have distinguished, as we did in *Doe (No. 3)*, *supra* at 140-142, and *Doe (No. 5)*, *supra* at 163 & n.15, between dissemination to law enforcement and dissemination to the public, suggesting that the former suffered no constitutional infirmity. In *Doe* v. *Poritz*, 142 N.J. 1, 106 (1995), the court impliedly upheld that portion of the New Jersey statute that transmitted information about registered sex offenders to local police, as the court found a protected liberty interest and requirement of a prior hearing only for those sex offenders whose information would be released to the public. The plaintiff had challenged both the registration and the public notification provisions of the New Jersey statute, and, where his classification under that scheme was unknown, the court's analysis did not restrict itself to any particular level of offender. *Id.* at 27. In analyzing the plaintiff's due process arguments, the court noted that, if classified as the lowest level offender, only the police would know of his classification and no liberty interest would be implicated:

"Because only the prosecutor and local law enforcement would receive notification under Tier One, [plaintiff] would be free, to the degree possible, to rehabilitate his name and standing in the community. However, if classified in Tier Two or Three, plaintiff's name and standing in the community would be threatened to the extent that his prior undisclosed criminal history and his new classification become known. We conclude that the consequences to plaintiff's reputation from classification in Tier Two or Three implicate a liberty interest."

*Id.* at 106. See *Doe* v. *Pataki*, 3 F. Supp. 2d 456, 471-472 (S.D.N.Y. 1998) (requiring notice and hearing prior to classification higher than level one, but

police already have access.

The plaintiffs seek to bolster their assertion that there is a privacy interest at stake by positing the potential for police "leaks" of registration information that would make the information public and the potential for police harassment of registered sex offenders. A constitutionally protected privacy interest cannot be conjured in this fashion. The present case poses a challenge to the sex offender registration statute on its face. If in fact there turn out to be such widespread leaks that communication of this information to the police must be treated as the constitutional equivalent of public dissemination, such a theory may be considered on a factual record compiled as part of any future challenge to the statute as applied. Similarly, if disclosure of this information to law enforcement results in police harassment of sex offenders, that theory of constitutional infringement may also be pursued in the future, on an appropriate factual record. We will not make such speculative predictions of police misconduct on the present facial challenge to the statute's constitutionality, just as we have not allowed the theoretical possibility of leaks or misuse of information to invalidate other statutory schemes.[32] See *Landry* v. *Attorney Gen.*, 429 Mass. 336, 352-354 (1999) (speculation about misuse of DNA samples did not invalidate DNA database statute); *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 159 n.6, 161 (1997) (fear of unwarranted disclosure of G. L. c. 209A order did not invalidate statute granting police access to G. L. c. 209A records).

The plaintiffs also posit that police will use the registration information as a basis to search or arrest sex offenders. This prediction may be accurate, but it is not a prediction of any

no hearing required before dissemination to law enforcement); *In re Maricopa County Juvenile Action No. JV-132744*, 188 Ariz. 180, 182-183 (Ct. App. 1996) (sex offender registration statute did not violate confidentiality rights of juveniles because registration information concerning juveniles went only to law enforcement agencies, not to general public). It was this precise distinction — i.e., the distinction between notice to police and notice to the public — that this court repeatedly observed in its own *Doe (No. 3)* and *Doe (No. 5)* decisions, both of which cited *Doe* v. *Poritz, supra,* with approval as to this very issue. *Doe (No. 3), supra. Doe (No. 5), supra.*

[32]We note that police have access, on a routine basis, to highly sensitive information through CORI. There is no showing that the police have engaged in widespread leaks or violations of CORI. The assumption that they would do so if provided with sex offender registration information is unwarranted.

form of unconstitutional deprivation. A person's prior criminal record is a legitimate factor to consider in determining whether there is reasonable suspicion for a stop or probable cause for a search or an arrest. Indeed, it was the Legislature's expectation that such information would assist law enforcement in the proper performance of its duties that prompted the passage of the 1999 statute.[33] The prospect that police will use sex offender registration information in the proper pursuit of law enforcement is not a reason to invalidate the registration scheme.

## IV

We thus conclude that the features of the 1999 statute at issue on the present appeal (the initial requirement of mail-in registration and the provision of registration information to law enforcement) do not offend the procedural due process requirements of art. 12. We do not preclude future challenges to the 1999 statute as applied, and we express no opinion as to the constitutionality of any other feature of the 1999 statute. The order granting the plaintiffs a preliminary injunction is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

Cowin, J. (concurring). I agree that it has not been shown that the new statute is unconstitutional on its face. See, e.g., *United States* v. *Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully . . . . The fact that the [legislation] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . "). However, I believe that the statute sweeps too broadly as applied to individuals (or classes of individuals) who could not

---

[33]The Legislature found that "law enforcement agencies' efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the existing lack of information known about sex offenders who live within their jurisdictions" and the registration system "will provide law enforcement with additional information critical to preventing sexual victimization and to resolve incidents involving sexual abuse promptly." St. 1999, c. 74, § 1.

rationally be deemed a threat to vulnerable persons. Because the court does not acknowledge the existence of a liberty interest that might be affected by the dissemination of sex offender information to law enforcement authorities, see *ante* at 433 (as opposed to its acknowledgment of a liberty interest related to the registration requirement, see *ante* at 428), these potential plaintiffs are left in an anomalous position: they may attack the statute on a ground on which they are unlikely to prevail (registration), yet they are precluded from "as applied" challenges regarding that feature of the statute (dissemination of information to law enforcement authorities) that may genuinely affect them in a constitutionally impermissible manner.

It seems late in the day to contend that a government-inspired notice to the police department of an individual's community that such individual is a "sex offender" — with all that implies insofar as the likelihood of official scrutiny of that person is concerned — does *not* implicate that individual's right not to have his liberty infringed without due process. It is not police access to or knowledge of offenders' registration data per se that offends liberty interests. To be sure, law enforcement agencies have access to information on convicted persons and conceivably could compile a data base on their own (although they are highly unlikely to do so). Rather, it is the dissemination to law enforcement officials of a government-endorsed list of persons who in the eyes of the State are at risk of reoffending that raises due process concerns. See *Doe* v. *Attorney Gen.*, 426 Mass. 136, 144 (1997) (*Doe [No. 3]*) (statutory classification of individuals as sex offenders "implicitly announces that, in the eyes of the State, [these individuals] present[] a risk of committing a sex offense").[1] Dissemination of such data signals law enforcement officials to focus their attention on these persons simply because the Legislature has, as a general matter, labeled them public dangers.

I distinguish between registration and dissemination because

---

[1] The court appears to conclude that because there is no public disclosure at this point, there is no branding of offenders as public dangers, *ante* at 436; however, the "statutory branding" that concerned us in *Doe* v. *Attorney Gen.*, 426 Mass. 136, 144 (1997) (*Doe [No. 3]*), occurs when the Legislature labels persons convicted of certain offenses as "sex offenders."

the objectionable features of registration have been removed in the current version of the statute. The present registration requirements are not burdensome in terms of the difficulty of compliance; and they result in an accumulation of data by law enforcement officials that exists even without this new source and is permissible as an initial effort by the government to deal with this problem. Although the statute may be too broad in terms of who is required to register, the innocuousness of registration renders that step facially valid. Thus, acknowledging the existence of a liberty interest in this aspect, as the court does, is of little significance because in my view it is unlikely that individuals will prevail on as-applied challenges to registration. Challenges to the dissemination of information to law enforcement authorities stand on a different footing.

Therefore, the recognition that automatic dissemination of the information in question to law enforcement authorities implicates liberty interests is not of merely academic concern. It is the foundation that is required in order to permit challenges to the statute as it applies to those who cannot constitutionally be made subject to its terms. There will be such persons. It has been estimated that the statute presently applies to 13,000 to 16,000 people. See *ante* at 430 n.20. The statute includes offenses "whose seriousness we well recognize" as well as those where the risk of reoffense "may be minimal and the present danger of [the offender] to children not significant." *Doe* v. *Attorney Gen.*, 430 Mass. 155, 164, 165 (1999) (*Doe [No. 5]*). For example, the offense of rape and abuse of a child, G. L. c. 265, § 23, and an attempt to commit this offense, may include individuals involved in consensual sexual experimentation with teenage peers. See, e.g., *Doe (No. 5)*, *supra* at 164 (discussing G. L. c. 265, § 23).[2]

These persons may well present no danger to the public or

_____

[2]In *Doe* v. *Attorney Gen.*, 430 Mass. 155, 164 (1999) (*Doe [No. 5]*), we noted that the crime of rape of a child, G. L. c. 265, § 23, includes very serious offenses, for which regulations, including registration as a sex offender, without a prior dangerousness hearing could be justified. We also noted, however, that the crime includes "acts such as sexual experimentation among underage peers and consensual sexual activity between teenagers (commonly referred to as statutory rape)." *Id.* With respect to these cases, we stated that the "interest in protecting children from recidivist sex offenders might not be

risk of committing another offense. While the Legislature is justified in providing for the dissemination of registration data to law enforcement authorities when the persons the Legislature seeks to regulate may be dangerous and at risk of committing another offense, it is not justified in doing so with respect to those persons who neither the Legislature nor the board could rationally find present a threat to vulnerable persons. See *Doe (No. 3), supra* at 149 (Fried, J., concurring), citing *Opinion of the Justices*, 423 Mass. 1201, 1224-1225 (1996) (persons can be regulated only after weighing "the kind and severity of the regulatory imposition, the kind and severity of the danger sought to be averted, and the aptness of the fit between the remedial measure and the danger to be averted"). Accordingly, the requirement that the board transmit registration data to law enforcement authorities may be unconstitutional as it applies to certain individuals or classes. Such persons should have the right to challenge the process ab initio. They cannot be required to defer their objection until an administrative agency declares them nondangerous and relieves them of the obligation to register. By that time, the information has been provided to law enforcement agencies and the damage has been done. But under the court's approach, they will be unable to mount this challenge because they are deemed to have no protected interest in whether the police receive the information in question.

I would hold that the statute, while facially valid, may be susceptible to "as applied" challenges which individuals would have standing to bring based on their constitutional right not to have their liberty infringed by indiscriminate identification of them to the police as "sex offenders."

MARSHALL, C.J. (concurring in part and dissenting in part, with whom Ireland and Cordy, JJ., join). Adults who prey sexually on children are a grave menace in our society. The public

sufficiently urgent" to justify registration. *Id.* Because we could not presume that every person convicted under G. L. c. 265, § 23, would pose the same threat of danger or risk of reoffense, we held that the category of rape of a child under G. L. c. 265, § 23, did not "adequately specify offenders by risk" as to warrant registration, as it existed at that time, of every person convicted under the statute. *Id.* at 165.

and Legislatures in all States[1] have concluded that persons convicted of such offenses may pose a continuing threat, one to be met by legislation providing means to keep track of their whereabouts and, in some circumstances, to inform residents of the communities where they reside.

It is settled in this Commonwealth that the Legislature may constitutionally impose a registration requirement on such menacing predators. In *Doe* v. *Attorney Gen.*, 426 Mass. 136, 139 (1997) (*Doe [No. 3]*), we said the major premise underlying the then-existing Massachusetts statute[2] was to "protect minors and other persons vulnerable to becoming victims of sex crimes." In *Doe* v. *Attorney Gen.*, 430 Mass. 155, 165 (1999) (*Doe [No. 5]*), we held that a statute tailored with particularity to meet that need would be valid under the Massachusetts Constitution. I therefore concur with the court to the extent that it upholds application of the 1999 statute,[3] to require registration, before a hearing, of those convicted of sexual offenses who pose "a grave threat to children," where the risk of reoffense "is compelling." *Doe (No. 5), supra.*

But the statute now before us sweeps more broadly.[4] It requires registration by persons who have engaged in consensual sexual acts between underage peers, G. L. c. 265, § 23, see *Doe (No. 5), supra* at 164. It requires registration by an adult man arrested in a police sting operation for soliciting another adult man to engage in consensual homosexual sex. See *Doe (No. 3), supra* at 137-138. The 1999 Act would require registration without a hearing — and transmission of detailed registration information to the Federal Bureau of Investigation (FBI) and local police — by individuals who pose no threat to children or other vulnerable persons.

---

[1]See *Roe* v. *Farwell*, 999 F. Supp. 174, 177 n.1 (D. Mass. 1998) (all fifty States have some version of a sex offender registration and notification statute).

[2]General Laws c. 6, §§ 178C-178O, inserted by St. 1996, c. 239, § 1.

[3]"An Act improving the sex offender registry and establishing civil commitment and community parole supervision for life for sex offenders," G. L. c. 6, §§ 178C-178P, as appearing in St. 1999, c. 74, § 2 (Act).

[4]The Act adds several new offenses under the definition of "[s]ex offense," including enticing someone "away" for prostitution, G. L. c. 272, § 2; incestuous marriage or intercourse, G. L. c. 272, § 17; and possession of child pornography, G. L. c. 272, § 9C.

Moreover, the statute is retrospective,[5] requiring registration by all persons convicted of a sex offense since 1981, in some cases earlier.[6] That increases the possibility of its application to persons who pose no present threat to the vulnerable members of our communities. See, e.g., *Doe (No. 3), supra* at 137-138.

To achieve the purpose of the legislation, as described in the preamble, in a manner that is consistent with our prior decisions and our Constitution, I conclude that the broad sweep of the 1999 legislation must be cabined as follows: First, all potential registrants may be required to provide the sex offender registry board (board), and only the board, with a current address so the board may contact them to schedule a hearing. Second, the detailed registration information (described in the Act)[7] may be transmitted to law enforcement officials for only those offenders who pose "a grave threat to children and other vulnerable populations" and where their risk of reoffense "is compelling." *Doe (No. 5), supra* at 165. In all other respects I respectfully dissent from the court's conclusions.[8]

The Legislature stated that it was necessary for the board to

[5]As the court notes, *ante* at 420 n.5, we are concerned here with the statute only as it applies retrospectively. The judge below ruled "that the statute provides sufficient due process protection as to those offenders convicted . . . on or after December 12, 1999," and the plaintiffs do not challenge that aspect of his order. *Id.*

[6]Under the statute, a "[s]ex offender" is someone who "has been convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense or a person released from incarceration or parole or probation supervision or custody with the department of youth services for such a conviction or adjudication or a person who has been adjudicated a sexually dangerous person under section 14 of chapter 123A, as in force at the time of adjudication, or a person released from civil commitment pursuant to section 9 of said chapter 123A, whichever last occurs, on or after August 1, 1981." G. L. c. 6, § 178C.

[7]The registration information provided to the police, prior to an individualized hearing, is substantial. It includes name, date and place of birth, sex, race, height, weight, eye and hair color, social security number, and home and work addresses; a photograph and set of fingerprints; a description of the offense; and any other information that may be useful in identifying the offender or his risk of reoffense. G. L. c. 6, § 178D. The board transmits the registration data, which it collects from a variety of sources, to the FBI and to local police departments immediately on mail-in registration by offenders neither in custody nor on probation or parole. G. L. c. 6, § 178E.

[8]In *Doe* v. *Attorney Gen.*, 430 Mass. 155, 166 (1999) (*Doe [No. 5]*), *supra*, we held that "[t]he burden of proof will be on the sex offender board to

have current addresses for all offenders so that it can offer them the constitutionally required hearings to classify each individual appropriately, according to his dangerousness and the risk of reoffense. St. 1999, c. 74, § 2. I see no constitutional difficulty in requiring all offenders to provide the board with their current addresses so that they may be reached for a classification hearing. As the court recognizes, *ante* at 428-431, furnishing the board with current location information is an infringement of an offender's liberty interest, but is constitutionally permissible, provided that the board does not inadvertently stigmatize persons as "sex offenders," as it gives notice to them of their hearings.[9] See *Doe (No. 3), supra* at 146 ("Government action unreasonably stigmatizing [an offender] would violate [his] constitutionally protected rights"). The intrusion should also be as minimal as possible. To that end, providing only a current home or work address should suffice. No additional information is necessary prior to a classification hearing.

The constitutional problem stems from another stated object of the 1999 Act, to "provide law enforcement with additional information critical to preventing sexual victimization and to resolve incidents involving sexual abuse promptly." St. 1999, c. 74, § 1. The statute provides that the board is to make available to, and affirmatively pass on to the FBI and other law enforcement officials nationwide, detailed information about all those who register. G. L. c. 6, §§ 178D, 178E. Because the statute is retrospective in its effect, an adult man arrested in 1990 in a police sting operation for soliciting another adult man at a highway rest stop to engage in consensual homosexual sex

establish at the hearing that the offender poses a risk to vulnerable populations." I note that the 1999 Act places the burden of proof on persons wishing to be relieved of the registration requirement: The burden of proof "shall be on the offender to prove" that the offender's "criminal history do[es] not indicate a risk of reoffense or a danger to the public." G. L. c. 6, § 178K (2) (*d*).

[9]The board is required to mail registration forms to offenders who are not incarcerated, on probation, or on parole, and it will annually mail verification forms to each offender. G. L. c. 6, §§ 178F, 178F¹/₂. In November, 1999, the board mailed 2,500 registration forms to offenders. To ensure that no person may inadvertently be publicly stigmatized as a "sex offender," see *Doe (No. 3), supra* at 144, and to foreclose the inadvertent public dissemination of sex offender registration, the envelope or other external cover of any communication to offenders should not identify the board as the sender.

may have lived that down and achieved success and respect in his community. *Doe (No. 3), supra* at 137-138. Now he would be required to register, and thus notify his local police, without any opportunity to show what he likely could: that he is not a danger to children or other vulnerable persons. Making a person register with the police, not in connection with any planned activity, is the factor that introduces a changed relationship between citizen and State, and "is in principle quite alien to our traditions, a relationship which when generalized has been the hallmark of totalitarian government." *Doe (No. 5), supra* at 162, quoting *Doe (No. 3), supra* at 150 (Fried, J., concurring).

In *Doe (No. 3), supra* at 144, we held that a person required to register by the 1996 statute had "a liberty and privacy interest protected by the Constitution of the Commonwealth that entitle[d] him to procedural due process." As the court recognizes, *ante* at 431, we said a combination of five factors led to that conclusion: "(1) the requirement that he register with local police; (2) the disclosure of accumulated personal information on request; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and, *most important*, (5) the statutory branding of him as a public danger, a sex offender. That statutory classification implicitly announces that, in the eyes of the State, [he] presents a risk of committing a sex offense." (Emphasis added.) *Doe (No. 3), supra* at 144.[10] The court concluded: "[I]t is contrary to the principle of fundamental fairness that underlies the concept of due process of law to deny the plaintiff a hearing at which the evidence might show that he is not a threat to children and other vulnerable persons whom the act seeks to protect and that disclosure is not needed when balanced against the public need to which the sex offender act responded." *Id.* at 146.

The question of disclosing information to the public is not involved in the first operational phase of the new statute and is

---

[10]The court states, *ante* at 431-432, that all these factors except the first — police knowledge of the offender's registration — have been eliminated under the 1999 statute. The court reaches this conclusion because public disclosure and its potential adverse effects no longer automatically accompany registration. The court does not explain how the fifth and most important factor — statutory branding of the offender as a public danger — has been eliminated, or even lessened under the new statute.

not presented by these appeals. But, contrary to what the court now claims, we made quite clear in *Doe (No. 5)* that registration with the police itself "engages serious liberty interests, and presents an 'importantly distinct kind of constitutional danger.' " *Id.* at 162, quoting *Doe (No. 3), supra* at 149 (Fried, J., concurring).[11] I recognize that the police and the FBI already have access through computerized files to large amounts of information on anyone who has been convicted of a criminal offense. *Ante* at 438. However, the critical difference under the 1999 sex offender registration statute is that some persons, those labeled as "sex offenders," are singled out and brought to the attention of the law enforcement agencies in the municipalities in which they live and work. This is not a minimal intrusion on sex offenders' liberty interests. The authorities may have all kinds of information on individuals in this country. But registration, as Justice Fried put it, "forces an action on the person required to register. It is a continuing, intrusive, and humiliating regulation of the person himself." *Doe (No. 3), supra* at 149 (Fried, J., concurring).[12] Moreover, as the Commonwealth itself recognizes, existing data bases on those convicted of sex (or other) offenses do not necessarily include current information on an offender's location. Hitherto the State has not had a right to demand that an individual keep it and the police regularly apprised of his movements at home and at work.

---

[11]The court incorrectly suggests that, in *Doe (No. 3), supra* at 146, and *Doe (No. 5), supra* at 155, we held that a preregistration hearing was required because, under the 1996 statute, registration "was automatically coupled with" public disclosure. *Ante* at 433. In *Doe (No. 5)* we were careful to note that registration itself (without reference to public notification) "engages serious liberty interests." *Id.* at 162. As Justice Fried noted, the act of registration alone is objectionable because it "forces an action on the person required to register." *Doe (No. 3), supra* at 149 (Fried, J., concurring). We did say that the liberty interest was "heightened" by the public access to registration information that the statute permits. *Doe (No. 5), supra* at 163. We did not say that, without public access to the information, a preregistration hearing was not required.

[12]The court says that the transmission of registration information to law enforcement does not "force[ ] an action on the person required to register." *Ante* at 436 n.27. The distinction is meaningless; dissemination of registration information to law enforcement follows automatically on registration. It is part and parcel of the act of registration.

In *Doe (No. 5)*, *supra* at 165, we recognized that situations may exist "where the danger to be prevented is grave, and the risk of reoffense great, such that the promulgation of regulations narrowly tailored to allow for automatic registration may clarify and simplify the enforcement of the sex offender registration act in a manner that comports with procedural due process." Contrary to the court's suggestions, the only possible justification for forwarding detailed information about past offenders to law enforcement officials is that the Legislature has determined that a sex offender poses a risk to vulnerable members of our society. To provide law enforcement officials with access to information that we have never required citizens to furnish, where there is no reasonable risk that they pose any threat to their fellow citizens, is manifestly overbroad. As to the court's suggestion that the police may take the names of every person in the community and search a data base to see whom they think might present a danger, *ante* at 434, in our society we do not give the police such unfettered power to appraise every person in every community.

The court notes repeatedly, *ante* at 432 n.23, 433, 439 n.31, that in *Doe (No. 3)* and *Doe (No. 5)* we cited with approval the cognate New Jersey statute and *Doe v. Poritz*, 142 N.J. 1 (1995), in which the Supreme Court of New Jersey "identified an infringement of a privacy interest from the public disclosure of information about a sex offender, distinguishing those offenders as to whom information would only be provided to law enforcement." *Ante* at 432 n.23. But the court fails to note that the New Jersey statute is far less broad in its retrospective reach, and does not include within its scope offenders who pose little or no threat to the vulnerable. The New Jersey statute, as it applies to persons convicted before its effective date, covers only a few offenses — aggravated sexual assault, sexual assault, aggravated criminal sexual contact, and kidnapping — and then *only* when those previously convicted of those offenses are found to be "repetitive" and "compulsive" offenders. See N.J. Stat. Ann. § 2C:7-2b(1), (2) (West 1995). The retrospective reach of the Massachusetts statute is not cabined in this manner, and the constitutional infirmity arises precisely because it encompasses individuals who pose no threat to the vulnerable.

The Commonwealth argues that registration by mail, with attendant notification to police, is a "minimal" imposition on a constitutionally protected liberty. Today, three Justices of this court accept that view. *Ante* at 428.[13] But that is unrealistic, and inconsistent with our holdings in *Doe (No. 3)*, *supra*, and *Doe (No. 5)*, *supra*. The 1999 Act requires thousands of citizens to write to the board, and thus to alert their local police, every time they move or change a job. To be reminded again and again of an offense years past, such as a teenage sexual encounter, that does not menace any vulnerable person now but that is swept into a grim, categorized term, "sex offense," would not be seen by most Americans as a minimal imposition.[14]

Forced registration, whether in person, by mail, by the Inter-

---

[13]Justice Cowin, in her concurring opinion, agrees that the statute is constitutionally infirm to the extent that the statutory scheme encompasses certain individuals or categories of individuals whom neither the Legislature nor the board could rationally find present a threat to vulnerable persons. *Ante* at 442-443 (Cowin, J., concurring). She concludes that the requirement that the board transmit registration data to law enforcement authorities is unconstitutional as it applies to such persons, since such transmission will take place prior to the holding of an administrative proceeding which could establish their "non-dangerous" status. *Id.* at 445 (Cowin, J., concurring). Under today's ruling the board has authority to transmit immediately to law enforcement all registration information of all those classified as "sex offenders." Individuals who choose to bring an "as applied" challenge will be forced to seek emergency injunctive relief to prevent the transmission of their information to police.

[14]The requirements of the 1999 Act may be especially burdensome for homeless persons. Such persons must register with the board and therefore may violate the act every three months, G. L. c. 6, § 178F, 178H (c), with the result that homeless persons may be subject in rapid order to multiple convictions and substantial criminal penalties. One of the named plaintiffs, Daniel Doe, is a fifty-six year old homeless man of limited mental capacity. He has been a ward of the State since a young age and has never held a steady job, nor lived in a house or apartment of his own. Under the order for hearings before the board mandated by § 178K (3), Doe will not receive a hearing until many other categories of offenders have been reached. Should he fail during this potentially lengthy time to comply with his duty to verify his registration data every ninety days, he is subject to criminal prosecution. G. L. c. 6, §§ 178F, 178F¹/₂. Should he fail to verify his registration data a third time, he is subject to a mandatory minimum sentence of five years in the State prison. G. L. c. 6, § 178H (c). If Daniel Doe is in fact incapable of complying with the rigorous requirements of keeping the board informed of his current whereabouts because of mental illness, he may challenge the validity of registration with the board as it applies to him.

net, or otherwise, is what brings about the fundamental change of which Justice Fried wrote: "[W]hile activities, professions, or relationships may be regulated, we do not have a general regime regulating adult competent persons as such. . . . Persons are left to choose freely and if they make the wrong choices they are subject to retrospective condemnation and punishment. This is not merely a conceptual difference. It is a profound expression of our Constitution's conception of human nature and of the relation of individuals to the State." *Doe (No. 3), supra* at 147-148 (Fried, J., concurring).

The court suggests that it is not beyond the Legislature's power to prescribe a more expedient way for the government to locate citizens and monitor their activities, when it has a legitimate reason for doing so. But what is happening here is not a neutral governmental act of collecting information, such as occurs during the census, for example. It is affixing a badge of infamy,[15] a "continuing, intrusive, and humiliating" regulation of persons who may be found to pose no danger and hence would be exempt if they were given the opportunity for a hearing before being required to register. *Doe (No. 3), supra* at 149 (Fried, J., concurring). The court's suggestion that a "sex offender" is not "branded" as a public danger because only the police will have access to the names of those registered, *ante* at 436, is inconsistent with our prior rulings. The police already have access to the criminal history records of all those convicted of crimes. The 1999 statute does something more: it informs the police that "in the eyes of the State, [an offender] presents a risk of committing a sex offense," it brands him "as a public danger." *Doe (No. 3), supra* at 144.

The police can, of course, obtain access to information on convicted persons whenever they have reason to. But I do not agree with the court that "the mere fact that that information has been assembled by the board in a more convenient format does not implicate any constitutionally protected privacy interest." *Ante* at 437. The ability of the police to access information on convicted persons, as the particularized need arises, is very different from, for example, sending to a police

[15]The Supreme Court of California has described sex offender registration as an "ignominious badge." *In re Birch*, 10 Cal. 3d 314, 322 (1973).

department what may amount to a list of young persons who have engaged in consensual sexual activities but have done nothing to endanger children or other vulnerable persons. To pass constitutional muster, the government must show more than a claim that its method is expedient.

The application of the Massachusetts statute to young persons raises particular concerns because of the large number of students in this Commonwealth. They are a great feature of Massachusetts life, but inevitably they commit occasional sexual offenses. Colleges and universities are trying to deal with the problem, but the cases that arise are often conflicted. See, e.g., *Schaer* v. *Brandeis Univ.*, 432 Mass. 474 (2000). See also In Alleged Date Rape, Harvard Split on Call for Lesser Penalty, Boston Globe, March 9, 1999, at A1 (two friends spent night together drinking; although intercourse occurred in context where defendant claimed consent was ambiguous, defendant pleaded guilty to indecent assault). Teenagers are another reason for concern at the broad sweep of the statute. In our society, there are teenage idols and models who flaunt sex. Much as we may regret it, sexual display and activity begin early.

Because the court sees no constitutional difference between those who prey on the vulnerable and those who have been convicted of sex offenses but pose no threat to the vulnerable, I see no limit to the new policy constitutionally ratified here. May *every* person convicted of *any* crime be required to register and have their registration information disseminated to police nationwide for years after he has completed whatever punishment society has determined he must undergo?

It is true that many other State courts have found sex offender registration constitutional. But the Massachusetts statute sweeps more broadly than most. It is far broader than the Federal statute, the Wetterling Act. That statute narrowly defines sex offenders as those persons who engage in violent sexual acts against children and other vulnerable populations. It is not retrospective, and hence would not require registration of anyone convicted before the effective date of our law, September 10, 1999. The Wetterling Act also does not require registration

of juveniles adjudged delinquent, or persons under eighteen years of age who were convicted of conduct that was criminal only because of the victim's age. See 42 U.S.C. § 14071(a)(3)(A) (2000).[16]

This court has on more than one occasion provided clear guidance to the Legislature that a statute to protect children and other vulnerable persons from adults who prey on them by keeping track of them and alerting police and local communities to their presence is constitutionally valid under our Constitution if it is tailored to meet that need. This act goes far beyond that need. To the extent — the great extent — that it does, I conclude that it is inconsistent with the principles on which this Commonwealth was founded.

---

[16]The Federal government requires States, as a condition of receiving certain Federal funding, to establish a sex offender registration and notification system and to participate in a national sex offender registry. See 42 U.S.C. §§ 14071 et seq. (2000).