NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12096


COMMONWEALTH  vs.  AMANDA L. HAMMOND.



Plymouth.     October 6, 2016. - July 21, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd, &
Cypher, JJ.


Rape.  Constitutional Law, Admissions and confessions,
     Voluntariness of statement, Sentence, Sex offender.  Due
     Process of Law, Sentence, Sex offender.  Sex Offender
     Registration and Community Notification Act.  Evidence,
     Admissions and confessions, Voluntariness of statement,
     Videotape, Sexual conduct.  Practice, Criminal, Admissions
     and confessions, Voluntariness of statement, Redaction,
     Argument by prosecutor, Sentence.




     Indictments found and returned in the Superior Court
Department on August 10, 2012.

     A pretrial motion to suppress evidence was heard by Richard
J. Chin, J.; the cases were tried before Cornelius J. Moriarty,
II, J., and a motion for postverdict relief was heard by him.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Nancy A. Dolberg, Committee for Public Counsel Services,
for the defendant.
     Stacey L. Gauthier, Assistant District Attorney, for the
Commonwealth.

LOWY, J.  The defendant, a twenty-two year old woman, was convicted of raping a fourteen year old boy and two thirteen year old boys, in violation of G. L. c. 265, § 23.  On appeal, the defendant claims that there were three main defects with her prosecution:  (1) the incriminating statements she made to police should have been suppressed; (2) the video recording of these statements that was shown at trial should have been further redacted; and (3) the prosecutor's closing argument was improper.  In addition, the defendant contends that the trial judge's lack of authority to relieve her from registering as a sex offender under G. L. c. 6, § 178E (f), constitutes a due process violation, as applied to her.

We conclude that there was no reversible error and affirm the convictions.  We further conclude that, based upon the record before us, there is no as-applied due process violation.

1.  Background.  We summarize the evidence the Commonwealth adduced at trial, reserving further details for discussion of the specific issues raised on appeal.

The charges in this case stem from two separate but related episodes that took place in June, 2012, in Brockton.  The first episode began when the defendant met up with two of the victims,

Roy,[1] then age thirteen, and David, then age fourteen,[2] in a park. The boys, whom she knew before these events, accompanied her to a liquor store and waited outside. When the defendant left the store she was with a man named Mike, who was in his thirties. They had purchased beer and "nip" liquor bottles. The defendant seemed "relatively intoxicated" and was drinking alcohol after leaving the liquor store.

The group made their way into the woods at the park. Mike asked Roy and David if they had ever had sex before. Roy responded with a "snide remark about [Mike] trying to have sex with [him]," but Mike said he was talking about them having sex with the defendant. Roy replied, "Oh, okay." Mike then asked the defendant if "she was okay" with performing oral sex on the boys. She responded, "Yeah." The defendant then performed oral sex on each boy, as well as on Mike. This first episode in the woods lasted about ten to fifteen minutes.

Roy, David, and the defendant then went to a friend's house that was near the park. At the house were two other boys, the third victim, James, then age thirteen, and Arthur, who was twelve. The group spent about one-half hour at the house.

---

[1] We refer to all of the underaged boys discussed in this opinion by pseudonyms.

[2] The only evidence in the record of the precise age of David and another of the victims is the equivocal testimony of Roy. The defendant does not contest the ages that were asserted.

During this time, Roy told James about his sexual encounter with the defendant. James asked Roy to "get [the defendant] to do it again." The boys convinced the defendant to go with them to a store. All five walked toward the store via a path through the park. The defendant was stumbling as she walked, aided by two of the boys.

The second episode began as the group proceeded down the path. Roy and James coaxed the defendant into having sex with them. The defendant had vaginal intercourse with James, Roy, and David. She also had oral sex with James during the second episode. Arthur did not participate.

As the group left the woods, Arthur's father, who had been searching for his son, was waiting. Arthur told his parents what he had observed, and the police were called.

Several weeks after the incidents, Brockton police went to the defendant's house, and she agreed to accompany them to the police station for an interview. There, she spoke with two detectives who had observed an earlier interview of James. During the defendant's interview, she acknowledged that she had had oral sex with Roy and David during the first episode and vaginal sex with Roy, David, and James during the second episode. At the end of the interview, the defendant was placed under arrest. She was eventually indicted on six counts of

statutory rape of Roy, David, and James in violation of G. L. c. 265, § 23.

Before trial, the defendant moved to suppress her statements to police. The motion was denied after an evidentiary hearing.

Following a jury trial where Roy and Arthur both testified under grants of immunity, the defendant was convicted on the three indictments charging vaginal intercourse and found not guilty on the three indictments charging oral penetration. The judge imposed concurrent three-year probationary sentences with several conditions. The judge also concluded that he could not relieve the defendant from registering with the Sex Offender Registry Board (SORB), G. L. c. 6, § 178E (f), but stayed the registration requirement pending an appeal. We granted the defendant's application for direct appellate review.

2. Discussion. a. Voluntariness of confession. Before trial, the defendant moved to suppress statements she made during the police interview, alleging they were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 467-474 (1966), and that they were not voluntary. The judge denied the motion in a written memorandum. On appeal, the defendant argues only that this decision was in error because the Commonwealth did not meet its burden to prove, beyond a reasonable doubt, that her confession was voluntary because the police (1) threatened to

adversely affect her child custody situation; (2) minimized the consequences of confessing to statutory rape; and (3) used false and deceptive tactics when they characterized Arthur's allegations against her.  Commonwealth v. O'Brian, 445 Mass. 720, 724, cert. denied, 549 U.S. 898 (2006).

When reviewing a denial of a motion to suppress, we "review de novo any findings of the motion judge that were based entirely on documentary evidence."  Commonwealth v. Monroe, 472 Mass. 461, 464 (2015), quoting Commonwealth v. Thomas, 469 Mass. 531, 539 (2014).  Because there is a video recording of the defendant's interview with police, "we are in the same position as the motion judge to determine what occurred during the interview."  Monroe, supra at 464, quoting Thomas, supra at 535 n.4.

"The test for voluntariness . . . is 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.'"  Commonwealth v. Tremblay, 460 Mass. 199, 207 (2011), quoting Commonwealth v. Souza, 428 Mass. 478, 483-484 (1998).  A statement is voluntary when it is "the product of a 'rational intellect' and a 'free will,' and not induced by physical or psychological coercion."  Monroe, 472 Mass. at 468, quoting Tremblay, 460 Mass at 207.  "Under this 'totality of the

circumstances' test, we consider all of the relevant circumstances surrounding the interrogation and the individual characteristics and conduct of the defendant." Tremblay, 460 Mass. at 207, quoting Commonwealth v. Selby, 420 Mass. 656, 663 (1995).[3] The Commonwealth must establish voluntariness beyond a reasonable doubt. Commonwealth v. Baye, 462 Mass. 246, 256 (2012).

   i. Alleged coercion relating to defendant's children. The defendant claims that the detectives improperly threatened that she might not regain custody of her children if she did not cooperate. Concern for a child or loved one can, in certain circumstances, make a statement involuntary. Monroe, 472 Mass. at 469; Commonwealth v. Scott, 430 Mass. 351, 355 (1999). Those circumstances are not present here. In Monroe, supra, we held that the police tactics were improperly coercive in part because the interrogation was "rife with threats to the defendant's ability to maintain contact with his infant daughter." There, "the detectives threatened the defendant with the loss of

---

[3] Factors that are relevant to the totality of the circumstances inquiry include, but are not limited to, "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation." Commonwealth v. Selby, 420 Mass. 656, 663 (1995), quoting Commonwealth v. Mandile, 397 Mass. 410, 413 (1986). No one factor is dispositive. See Commonwealth v. Baye, 462 Mass. 246, 256 (2012); Selby, 420 Mass. at 664.

contact with his child by repeatedly and falsely claiming that if he did not tell them what happened, the child could be taken away and raised by strangers." Id.

The references to the defendant's children in the instant case were quite different. As the detectives urged the defendant to confess, the defendant said, "I have children. I'm trying to protect myself." One of the detectives responded:

> "If that's what's hanging you up is you're afraid if you tell us, you're never going to get your kids back, is that what you're afraid of? That's it, isn't it? Yeah, okay. I mean, and I understand that, okay. But listen, you're not doing yourself any good lying to us and we know you're lying to us. I can see it."

This exchange is far from the "barrage" of references to the suspect's daughter in Monroe. See Monroe, 472 Mass. at 467.

ii. Alleged minimization. The defendant claims that her confession was not voluntary because the detectives improperly "minimized" the consequences of confessing to the crime of statutory rape. Specifically, the defendant claims that by threatening her with a charge of rape by force,[4] her only choice was to confess to statutory rape.

Minimization, combined with other factors, may render a confession involuntary because it can serve as an implied promise that the requested confession will result in leniency.

---

[4] During the police investigation, James initially said in an interview that he had been forcibly raped by the defendant.

Commonwealth v. DiGiambattista, 442 Mass. 423, 439 (2004).

Here, the detectives' tactics were not improper.  One of the

detectives were aware that James had said in his interview that

the defendant forced him to have sex.  The police were trying to

understand what happened; they were not improperly minimizing

the gravity of the crime of statutory rape to elicit a

confession.

iii.  Alleged false and deceptive tactics.  The defendant

argues that the detectives' characterization of Arthur's

allegations was false and deceptive because the detectives

suggested that the boy had claimed that he was "propositioned"

by the defendant, and that Arthur had agreed with James's

characterization of the rapes as forcible.

The use of false and deceptive tactics by police, while not

strictly forbidden, can cast doubt on the voluntariness of a

statement.  See DiGiambattista, 442 Mass. at 432-433, and cases

cited.  Such tactics are inappropriate.  They will not by

themselves ordinarily render a statement involuntary, as their

use is one factor in the analysis of the totality of the

circumstances.  Tremblay, 460 Mass. at 208; Selby, 420 Mass. at

663-664.

The detectives falsely claimed that Arthur had said the

defendant "propositioned" him on one occasion, and they never

explicitly said that Arthur was unsupportive of James's claim of

forcible rape. These statements constituted a fraction of the forty-odd minute long interview. Further, at the time of the interview there was a real question whether the rapes were forcible based on James's interview. To the extent that these misstatements in the interview could be described as false and deceptive, we conclude that the defendant's will was not overborne. See Selby, 420 Mass. at 664-665 (confession voluntary even though police improperly used photocopy of random handprint to suggest defendant was at crime scene).

Based on the totality of the circumstances, the judge was correct in ruling that the defendant's confession was voluntary. The defendant appeared sober and oriented during the interview. She was provided Miranda warnings even though she was not in custody, and she was specifically told that she could leave and get an attorney if she so chose. Moreover, the defendant demonstrated the ability and mental agility to deny any sexual contact with the boys through her initial rendition of what had occurred. We affirm the order denying the defendant's motion to suppress.[5]

_____

[5] The defendant also claims that her poor educational and mental health background contributed to her vulnerability to coercion. The defendant does nothing more to support these claims than point to her own statements in the interview that she was "kind of slow" and suffered from depression and bipolar disorder. On this record, there is nothing indicating that any shortcomings in the defendant's educational or mental health background rendered her confession involuntary. See

b.  Redaction of video recording.  The defendant argues that the judge committed prejudicial error by failing to redact the following two statements by the detectives from the video recording of the defendant's interview with police:  (1) "You're talking rape by force or statutory, okay," and (2) "You want to know why I know you are telling the truth? . . . You are telling [Arthur]'s story verbatim right now.  Other than he knows the order.  He remembers the order."  The judge allowed the first statement to provide context to what the judge found to be the "implied admissions" of the defendant during the interview.[6]  The judge allowed the second statement because it provided context for the defendant's statement that she could not recall the order in which she had sex with the boys.

"Whether evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error."  Commonwealth v. Sylvia,

---

Commonwealth v. Ostrander, 441 Mass. 344, 350, 351, 357, cert. denied, 543 U.S. 867 (2004) (affirming denial of motion to suppress where expert testimony from both defendant and Commonwealth showed defendant had intellectual functioning between "mildly mentally retarded to borderline"); Commonwealth v. Beland, 436 Mass. 273, 282 (2002) (affirming denial of motion to suppress where defendant had prior diagnosis of schizophrenia and psychosis).

[6] According to the judge, the "implied admissions" made by the defendant were the following statements:  "The way to look at it it's bad"; "People mess up"; and "But you still have to have the consequences."

456 Mass. 182, 192 (2010), quoting Commonwealth v. Simpson, 434
Mass. 570, 578-579 (2001).  We will conclude that there has been
an abuse of discretion only if the judge has "made 'a clear
error of judgment in weighing' the factors relevant to the
decision, . . . such that the decision falls outside the range
of reasonable alternatives" (citation omitted).  L.L. v.
Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The judge worked diligently with the attorneys in this case
to redact any potentially prejudicial statements in the
recording. The full recording of the defendant's interview with
police was more than forty minutes, while the recording
ultimately shown at trial, after careful redaction, was less
than one-half hour, and there are nearly twenty transcript pages
describing the discussion between the judge and the attorneys of
what to redact.  The decision not to redact two statements by
police to provide context in an interview of more than twenty-
seven minutes was well within the range of reasonable
alternatives.[7]

---

[7] The defendant further complains that the prejudicial
effect of these two statements was enhanced because the jury had
access to the recording during deliberations and watched it
multiple times.  After the jury began deliberations, the
prosecutor asked the judge if the jury could have the recording.
The judge stated, "If they request it, sure."  Defense counsel
did not object to this. Where evidence is admissible, it is not
error for the jury to view it during deliberations in its
admissible form.  It was not an abuse of discretion to allow the
jury to view during deliberations the defendant's recorded

c. <u>Closing argument</u>. The defendant asserts that the prosecutor's closing argument was "rife" with improper arguments that warrant the grant of a new trial.

After reviewing the six statements the defendant identifies, in light of the prosecutor's entire argument and in light of the judge's instructions to the jury and the evidence at trial, we conclude that any errors in the prosecutor's closing argument did not prejudice the defendant. <u>Commonwealth</u> v. <u>Tu Trinh</u>, 458 Mass. 776, 785 (2011).

Four of the six statements were proper. First, the prosecutor did not improperly shift the burden to the defendant when he argued that it was more likely that the defendant would have gone to the police after the first episode when Mike was involved if she had truly been a victim, rather than returning to the woods with two of the same boys. See <u>Commonwealth</u> v. <u>Francis</u>, 450 Mass. 132, 142 (2007) (prosecutor entitled to invite jury to draw fair inferences from evidence). Second, the prosecutor urged the jury to decide the case on the facts when he asked a rhetorical question that implored the jury to regard the case no differently from how they would if the victims were female and the defendant male. See <u>Commonwealth</u> v. <u>Kozec</u>, 399

statements that had been admitted in evidence. <u>Commonwealth</u> v. <u>Freiberg</u>, 405 Mass. 282, 305, cert. denied, 493 U.S. 940 (1989) ("Because the tapes were admitted in evidence, the jury were free to listen to them as often as they pleased during deliberations").

Mass. 514, 516 (1987) (proper for prosecutor to argue for conviction based on evidence). Third, the prosecutor did not improperly vouch for Roy and Arthur when he mentioned that they were immunized, because it is proper to argue that the motivation of witnesses is to tell the truth and to mention the possibility of perjury charges if a witness testifies untruthfully. Commonwealth v. Webb, 468 Mass. 26, 36 (2014). Fourth, the prosecutor's statement regarding the timeline of the day of the crimes was a reasonable inference from the evidence.

Two of the prosecutor's statements were improper. The first improper statement was the prosecutor's invocation of his oath to suggest his personal belief in the defendant's guilt.[8] Defense counsel objected to this statement, and the trial judge agreed that the reference to taking an oath would have been "better left unsaid." The judge gave a curative instruction on this issue during his final instructions.[9] Although the prosecutor's reference to his oath was improper, it was not

---

[8] The prosecutor said, "Frankly, I have a little bit of sympathy for [the defendant]. But I took an oath to the Commonwealth of Massachusetts to faithfully and fairly prosecute the laws of the Commonwealth. And you as jurors took an oath to follow the rules of law as explained to you by [the judge]."

[9] The judge's instruction was: "[T]here was reference by one of the attorneys during the closing arguments that he had taken an oath. Ladies and gentlemen, I suggest to you the mere fact that the assistant district attorney may have taken an oath does not give him any greater knowledge as to the credibility of any witness. It is for you to determine the credibility of all the witnesses in this case."

overly prejudicial when viewed in context of the entire argument and in conjunction with the judge's effective curative instruction. See Commonwealth v. Robidoux, 450 Mass. 144, 162-163 (2007). The jury are presumed to have followed the judge's instruction. Id.[10]

The second improper statement occurred when the prosecutor told the jury the purpose of the statute the defendant was charged under was to protect minors.[11] The judge agreed with the defendant that this remark "should not have been stated." The prosecutor's statement was improper. Jurors decide facts and apply those facts to the law. An appeal to policy reasons for the enactment of criminal statutes is inappropriate argument. The issue at trial is not whether rape of a child is wrong. It

---

[10] The defendant also argues that the prosecutor's reference to the jurors' oath was improper. This was not a call upon the jury to do their "job" by convicting the defendant. Contrast Commonwealth v. Degro, 432 Mass. 319, 328-329 (2000) (improper argument to tell jurors to "do your job" where it implicitly meant jury had duty to convict). Here, the prosecutor was not suggesting to the jurors that their oath obliged them to convict, rather he was telling the jury to follow the law given to them by the judge. See Commonwealth v. Adams, 434 Mass. 805, 822 (2001).

[11] The prosecutor argued, "And I suggest to you that there is a darn good reason for this statute. Because young people under the age of sixteen aren't mature enough to make the decision to engage in sex. They don't truly understand the potential ramifications, be it unwanted pregnancy or sexually transmitted diseases. It doesn't matter whether the boys wanted the sex, enjoyed the sex, or whether they wanted to testify in court. None of that matters. We as a society have a greater interest in protecting minors from themselves in these kind of situations."

is.  The issue is whether the Commonwealth has proved
penetration and that the age of the complainant is under sixteen
beyond a reasonable doubt.

The judge, however, gave a corrective instruction.[12]  Where
there is an improper argument, "we must and do recognize that
closing argument is identified as argument, the jury understands
that, instructions from the judge inform the jury that closing
argument is not evidence, and instructions may mitigate any
prejudice in the final argument."  Kozec, 399 Mass. at 517.
Given the pointed curative instruction and the judge's entire
charge, including instructing the jury not to decide this case
on sympathy, we cannot say that this statement by the prosecutor
was prejudicial.

d.  Due process challenge.  Before imposing the sentence of
straight probation, the judge ordered the defendant to undergo a
sex offender evaluation performed by a licensed clinical social
worker.  The social worker reported that the defendant was not a
pedophile and not sexually dangerous.  Based on this, the
defendant asked the judge to stay her obligation to register as
a sex offender pursuant to G. L. c. 6, §§ 178C to 176P.  The

---

[12] The judge told the jury, "In [the prosecutor]'s closing
argument to you he referenced what he believed to be the
purposes of the statute.  Your focus is upon the evidence.  It
is not upon the purposes of the statute.  All right?  So to the
extent that there is some suggestion that you should be
influenced by the purposes of the statute, and I am not
suggesting that there was, you should disregard it."

judge concluded that he had no authority to relieve the defendant of her obligation to register because her offenses involved children, see G. L. c. 6, § 178E (f), but agreed to stay her obligation to register pending appeal.

The defendant now argues that the statute, which categorically deprives a sentencing judge of authority to relieve a defendant of the obligation to register in any case involving a sex offense against a child, is unconstitutional as applied to her under the Fourteenth Amendment of the United States Constitution and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights.

We begin with an overview of the relevant portion of Massachusetts sex offender registry laws to clarify the due process issue, and then turn to the particulars of the defendant's claim.

i. Massachusetts sex offender registry scheme. In 1999, the Legislature overhauled the sex offender registry law after an earlier version was successfully challenged on due process grounds. See Roe v. Attorney Gen., 434 Mass. 418, 422-423 (2001). The 1999 statute requires adults convicted of a sex offense (as well as juveniles adjudicated as having committed a sex offense) to register with SORB. G. L. c. 6, §§ 178C, 178E, 178K. The registration process essentially involves two stages.

During the first stage, which occurs shortly after sentencing, those who must register submit their information to SORB, which then transmits the data to local police and the Federal Bureau of Investigation (FBI).  See G. L. c. 6, § 178E (c); 803 Code Mass. Regs. § 1.06(1) (2016).  A sentencing judge has the authority in certain circumstances to relieve the offender of this preliminary obligation and thus allow the offender to avoid the registration process entirely.  For example, a judge who does not sentence an offender to immediate confinement has the authority -- and indeed is directed -- to determine whether that person should be required to register at all.  G. L. c. 6, § 178E (f).[13]  The judge, however, is precluded by the statute from relieving any person who, like the defendant, has been convicted of a sex offense with a child from registering as a sex offender.  See G. L. c. 6, § 178E (f).  Those who are not relieved of the obligation to register by the sentencing judge will then go through the second stage of the process.

_____

[13] "In the case of a sex offender who has been convicted of a sex offense . . . and who has not been sentenced to immediate confinement, the court shall . . . determine whether the circumstances of the offense in conjunction with the offender's criminal history indicate that the sex offender does not pose a risk of reoffense or a danger to the public.  If the court so determines, the court shall relieve such sex offender of the obligation to register under sections 178C to 178P, inclusive. The court may not make such a determination or finding if the sex offender . . . has been convicted of a sex offense involving a child . . . ."  G. L. c. 6, § 178E (f).

During the second stage, SORB prepares an initial classification of the offender as a level one, two, or three offender, based on the person's dangerousness and the degree of risk (from low to high) that the person poses to reoffend. G. L. c. 6, § 178K (2) (a)-(c). Following the initial classification, offenders required to register have a right to challenge SORB's decision at a de novo administrative hearing. G. L. c. 6, § 178L (2). At this hearing, SORB has the burden to prove the appropriateness of its classification by clear and convincing evidence. Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 298 (2015). The determination reached after the de novo hearing is considered the final classification. G. L. c. 6, § 178L (2). Following the hearing, the offender has a right to appeal the final classification decision to the Superior Court. See G. L. c. 6, § 178M; G. L. c. 30A, § 14.

For certain sex offenses, SORB, like the sentencing judge, has the authority to relieve the offender of the obligation to register because his or her circumstances do not indicate a risk of reoffense or a danger to the public. G. L. c. 6, § 178K (2) (d).[14] SORB, like the judge during sentencing, however, is

---

[14] "The board may, upon making specific written findings that the circumstances of the offense in conjunction with the offender's criminal history do not indicate a risk of reoffense or a danger to the public and the reasons therefor, relieve such

precluded from relieving any person who has been convicted of a sex offense with a child of his or her registration obligation (unless that person has already been registered for ten years). Id. Significantly, if an offender is relieved of the registration obligation by the board at the second stage of the process, the information received from the offender during the first stage and transmitted to the local police and FBI is removed from the registry and the police and FBI are so notified. Id.

ii. The defendant's claim. When government action interferes with a protected liberty or property interest, procedural due process concerns arise. Roe, 434 Mass. at 427 (2001), citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Where there is interference with such an interest, a court must look at "the private interest that will be affected by the official action . . . the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

---

sex offender of any further obligation to register, shall remove such sex offender's registration information from the registry and shall so notify the police departments where said sex offender lives and works or if in custody intends to live and work upon release, and where the offense was committed and the Federal Bureau of Investigation. . . . The provisions of this subsection shall . . . not apply if a sex offender has been convicted of a sex offense involving a child or a sexually violent offense, and such offender has not already registered pursuant to this chapter for at least ten years . . . ." G. L. c. 6, § 178K (2) (d).

safeguards; and finally, the Government's interest." Mathews, 424 U.S. at 335. Procedural due process requires a "pragmatic and flexible" analysis, as opposed to a "rigid [and] hypertechnical" one. Roe, 434 Mass. at 427. Due process "calls for such procedural protections as the particular situation demands." Id., quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

A defendant's due process rights are implicated in different ways during the first stage and the second stage of the registration process.[15]

A. Stage one. The defendant's case currently resides in stage one of the SORB process, where the only recognized interest at stake for the defendant is having to send her registration information to SORB, which would then transmit that information to law enforcement. Roe, 434 Mass. at 428. She is not being classified at this stage, and, as we explain below, is

---

[15] We distinguish the issue in this case from the issue in Commonwealth v. Dalton, 467 Mass. 555 (2014). In that case, the sentencing judge concluded that the use of "may not" in G. L. c. 6, § 178E (f), see supra note 13, gave a judge discretion to relieve a defendant convicted of a sex offense involving a child and not sentenced to immediate confinement from the obligation to register with SORB. Id. at 555-556. We held that the plain language of the statute precluded such discretion. Id. at 559. Here, the Commonwealth is correct to point out that Dalton precludes the defendant from relief from registration based on the statute. That does not mean, however, that the defendant may not challenge the statute on constitutional grounds. See Roe v. Attorney Gen., 434 Mass. 418, 442 (2001) (facial validity of statute does not preclude as applied due process challenges).

not precluded from seeking relief from the registration requirement at stage two. Her information would not be publicly disseminated at this stage. She is only being required to send her information to the board. This requirement infringes to some extent on her liberty, see id. ("The mere fact that a citizen is being forced to take some action [unconnected from the citizen's own desire to engage in a form of regulated activity] infringes, to at least some extent, on his liberty"), but her interest is slight compared to the considerable governmental interest at this stage.

The government interest at stake here is the protection of "the vulnerable members of our communities from sexual offenders." St. 1999, c. 74, emergency preamble. In crafting the law, the Legislature found "the danger of recidivism posed by sex offenders, especially sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, to be grave and that the protection of the public from these sex offenders is of paramount interest." St. 1999, c. 74, § 1. "It also found that 'law enforcement agencies' efforts to protect their communities' from sex offenders are 'impaired by the existing lack of information known about sex offenders who live within their jurisdictions'; that the registration of sex offenders is a proper exercise of police powers 'regulating present and ongoing conduct, which will provide law enforcement

with additional information critical to preventing sexual victimization'; and that the 'registration by sex offenders is necessary in order to permit classification of such offenders on an individualized basis according to their risk of reoffense and degree of dangerousness'" (emphases omitted). Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 789-790 (2008) (Doe No. 8725), quoting St. 1999, c. 74, § 1.

On balance, and on the record before us, we conclude that the governmental interest in ensuring that law enforcement has accurate information on the defendant, who was convicted of three indictments charging child rape, at this preliminary stage of the registration process significantly outweighs the defendant's liberty interest in not having to mail her registration information to SORB. Roe, 434 Mass. at 430-431. There is, in short, no due process violation in the defendant's having to send her information to SORB, or in the judge's being unable under the statute to relieve her of the obligation to do so.

B. Stage two. Because we do not find a due process violation in the first stage of the sex offender registration process, the defendant will have to move forward into the second stage. That is, after she submits her information to SORB she will then undergo the SORB classification process. This stage

of the SORB process, which can result in a defendant being classified as a sex offender, implicates much more serious liberty interests for the defendant that are entitled to strong procedural due process protections. See Doe v. Attorney Gen., 426 Mass. 136, 143 (1997). See also Doe No. 8725, 450 Mass. at 792. The defendant, however, is not yet at that stage. The only claim she has made so far -- indeed, the only claim she can properly make at this time in the context of this direct appeal from her convictions -- is her due process challenge to the sentencing judge's authority at the first stage, which we have already addressed. In the context of this criminal case it would be imprudent for us to attempt to go further and decide whether the forthcoming SORB classification process will itself result in a due process violation.[16]

We are not blind to the virtual certainty that the defendant will be classified as at least a level one sex offender. The statute does not permit the board to relieve any offender who has been convicted of an offense involving a child. See G. L. c. 6, § 178K (2) (d). Nothing we have said, however,

---

[16] We note that the vast majority of cases that challenge various aspects of the sex offender registration scheme on due process grounds come to the court in the context of civil litigation where SORB is a party and the statutory and constitutional challenges have been fully briefed. Here, the challenge is part of a criminal appeal where the bulk of the arguments are focused on the defendant's trial, its surrounding circumstances, and her sentencing.

prevents the defendant from reasserting her as applied due process challenge during stage two of the process. SORB will have a fuller record than the sentencing judge on which to assess the defendant's dangerousness and risk of reoffense. Although SORB as an administrative agency does not have the authority to find the statute unconstitutional on its face or as applied, Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 628 (2011), there appears to be nothing in the statute that would prevent it, when making its classification decision, from finding that the defendant presents no risk of reoffense or danger to the public, if that is the case. The defendant would be able to present that favorable finding (or challenge any adverse finding) in an appeal to the Superior Court under G. L. c. 6, § 178M, and G. L. c. 30A, § 14, or in a declaratory judgment action, and argue that the mandatory registration requirement of G. L. c. 6, § 178K (2) (d), constitutes a due process violation. A Superior Court judge would then have the benefit not only of the sentencing judge's assessment, but also of SORB's insight into her risk of recidivism and dangerousness when addressing her due process claim.

3. Conclusion. The judgments below are affirmed. We also hold that there has been no due process violation in the judge's

declining to relieve the defendant of her obligation to register as a sex offender.

<u>So ordered</u>.

HINES, J. (concurring in part and dissenting in part, with whom Lenk and Budd, JJ., join).  Although I agree that the court properly rejected the defendant's appeal from the denial of her motion to suppress and other alleged errors, I write separately to express disagreement with the court's resolution of the defendant's claim that G. L. c. 6, § 178E (f), is unconstitutional as applied to her.  The court spurns the defendant's constitutional claim, taking the position that no due process right is implicated by the defendant's provision of the registration data to the Sex Offender Registry Board (SORB) and SORB's transmission of that information to law enforcement authorities.  In my view, this analytical approach fails to take the full measure of the liberty interest at stake for this defendant who, having been convicted of statutory rape under G. L. c. 265, § 23, but determined by the trial judge to present no danger to the "vulnerable" population protected by the statute, is subject to mandatory registration, with all its attendant consequences.  Therefore, I dissent.

Contrary to the court's view, the burden on the defendant's liberty interest is not simply in having to provide her registration data to SORB and live with the consequences of having that information transmitted to law enforcement authorities.  That measure for a protected liberty interest may be appropriate in circumstances where the outcome of the

registration process is not fixed, as where SORB has the authority to determine that the defendant presents no risk of sexual reoffense and may be relieved of the obligation to register at all.  See G. L. c. 6, § 178K (2) (d) (relief from registration based on "risk of reoffense or a danger to the public" cannot be granted to a "sex offender [who] has been convicted of a sex offense involving a child" and "has not already registered . . . for at least ten years").

Here, of course, the irrebuttable presumption of dangerousness compels at least a level one classification which imposes certain restraints on the defendant's liberty.  See Doe, SORB No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 308 (2015); G. L. c. 6, § 178K (2) (a).  Where a defendant is forced to register, despite posing no danger to the community, this "presents an 'importantly distinct kind of constitutional danger,' because it 'forces an action on the person required to register.  It is a continuing, intrusive, and humiliating regulation of the person [her]self.'"  Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 792 (2008) (Doe No. 8725), quoting Doe v. Attorney Gen., 426 Mass. 136, 149 (1997) (Fried, J., concurring).  Even though registration data is not released publicly, the defendant will be "singled out and brought to the attention of the law enforcement agencies in the municipalities in which [she]

live[s] and work[s]" because SORB immediately shares that information with local law enforcement and the FBI (citation omitted). Doe, No. 8725, supra at 791. G. L. c. 6, § 178E (c). The defendant's ability to move from her home, work, or place of higher learning is restricted because she must provide SORB ten days' notice before moving. G. L. c. 6, § 178E (h)-(j). Further, if she is a homeless person, the defendant must verify her registration every thirty days. G. L. c. 6, § 178F. The police and SORB may release the registration data of level one offenders to the Department of Children and Families, which may question the safety of the defendant's children. G. L. c. 6, § 178K (2) (a). See Adoption of Anton, 72 Mass. App. Ct. 667, 668 (2008). Thus, the defendant's liberty interest is not de minimis.

We have come to this bridge before. In Doe, No. 8725, 450 Mass. at 785-786, we acknowledged that, "where the record would establish 'that Doe poses no risk at all [of reoffense]' the application of the statutory provisions that permanently foreclose his being relieved of the duty to register may be 'constitutionally vulnerable.'" Id., quoting Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 762 (2006). See Roe v. Attorney Gen., 434 Mass. 418, 445 (2001) ("While the Legislature is justified in providing for the dissemination of registration data to law enforcement

authorities when the persons the Legislature seeks to regulate may be dangerous and at risk of committing another offense, it is not justified in doing so with respect to those persons who neither the Legislature nor the [SORB] could rationally find present a threat to vulnerable persons").  Therefore, I am persuaded that the defendant's liberty interest is not so narrow as to forgo any consideration of due process protections.  For that reason, the court should consider whether the time has come to answer the unresolved constitutional question that hangs over this case, and provide guidance for similarly situated defendants.

As I have noted above, the issue is significant for this defendant and others who are able to credibly establish that they are not dangerous to vulnerable persons.  And, the issue is presented here on a record that has not been challenged as lacking in credibility.  Therefore, I see no reason to avoid the issue by sending the defendant on a journey where the end will be the same as the beginning.  SORB has no authority to relieve her of the obligation to register.  Nor does the Superior Court have such authority; the limitations on the trial judge in this case are the same as those faced by the Superior Court in a G. L. c. 30A review of the SORB classification decision.  Because the issue ultimately will come to this court and the defendant has no other means to raise this claim, she is

entitled to a determination by this court whether the statute is unconstitutional as applied to her.  Instead of sending the defendant on this futile quest for relief, this court should just decide the issue.

Notwithstanding the importance of the issue, it has not been properly briefed by the parties, making it unwise to go further than a recognition that the nature of the liberty interest at stake justifies further consideration by this court. Therefore, I would order supplemental briefing by the parties and invite amicus briefs by interested parties, including the Attorney General, and preserve the option for argument on the issue.