APPEALS COURT 
 
 COMMONWEALTH vs. JOSE ENCARNACION

 
 Docket:
 23-P-1460
 
 
 Dates:
 May 7, 2024 – November 5, 2024
 
 
 Present:
 Henry, Grant, & D'Angelo, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Firearms. License. Evidence, Firearm, Hearsay, Admissions and confessions, Voluntariness of statement. Constitutional Law, Confrontation of witnesses, Harmless error, Assistance of counsel, Voluntariness of statement. Error, Harmless. Practice, Criminal, New trial, Hearsay, Confrontation of witnesses, Harmless error, Instructions to jury, Admissions and confessions, Voluntariness of statement, Assistance of counsel.
 
 

       Complaint received and sworn to in the
Springfield Division of the District Court Department on January 9, 2020. 
      The case was tried before Patrick S.
Sabbs, J., and a motion for a new trial was heard by him.
      James P. McKenna for the defendant.
      Cynthia Cullen Payne, Assistant District
Attorney, for the Commonwealth.
      D'ANGELO, J.  In this appeal, we are asked to decide
whether a witness from the Department of Criminal Justice Information Services
(CJIS) may testify about the results of a search of its firearm registry
records conducted by a nontestifying CJIS employee.  We hold that such testimony is inadmissible
hearsay and violates the confrontation clause of the Sixth Amendment to the
United States Constitution and art. 12 of the Massachusetts Declaration of
Rights.  In the context of this case, we
further conclude that, as to the conviction for carrying a firearm without a
license, the CJIS employee's testimony was harmless beyond a reasonable doubt
because at the time of the defendant's arrest he admitted that he did not have
a license to carry a firearm (LTC).[1] 
However, without the CJIS employee's inadmissible testimony, there was
no evidence that the defendant did not have a valid firearms identification
card (FID) and therefore we reverse his conviction for unlawful possession of
ammunition.[2]
      Background.  The defendant's car was stopped on January 8,
2020, because he had a defective brake light. 
During the stop, officers learned that the defendant had a suspended driver's
license and arrested him.  The officer
placed the defendant in handcuffs and found a firearm between the driver's seat
and the center console.  The officer
approached the defendant and "demanded his [LTC]."  In response, the defendant informed the
officer that "he did not have [an LTC]."  Officers searched the defendant's vehicle and
found a sock containing six rounds of loose ammunition and a firearm magazine
containing seven rounds of ammunition.  
      CJIS Deputy Commissioner Michaela Dunne
(Dunne) testified that a CJIS system available to law enforcement contains a
record of people who have applied for a firearm license and whether the
applicants were denied or granted a license. 
To search the CJIS database, Dunne explained, 
"you just
type in the person's name and date of birth, and it brings up either a firearms
license history if they've ever applied for or been issued a firearm, or it
brings up a No Record, essentially saying that based on this name and date of
birth, this person does not have a firearms license."  
Dunne did not
personally conduct the CJIS query regarding the defendant.  Defense counsel objected and argued that
Dunne's testimony constituted two levels of hearsay and also violated the
defendant's right to confront his accuser. 
The judge overruled the objection and allowed Dunne's testimony.  Dunne testified that the manager of the CJIS
firearms records bureau, Scott Ciccone, conducted the computer search and the
result of the query was "there was no record of that name and date of
birth in the system" and "that would indicate that the individual
does not have a firearms license in Massachusetts and never had a firearms
license in Massachusetts" which includes "an LTC or [FID]
card."  Dunne learned this
information from a printout that she had received by an e‑mail message from
Ciccone.  She did not have it with her in
court.[3]  
      The Commonwealth also attempted to
introduce an affidavit of Dunne describing a query conducted by an attorney at
CJIS, Amy Conway, that also purportedly resulted in no record being found of an
LTC or FID card issued to the defendant. 
The judge excluded the affidavit.[4] 
Defense counsel objected to Dunne's testimony about Conway's query.  In response, the prosecutor argued that the
absence of a record in the CJIS database should be admissible as a business
record, referring the judge to Commonwealth v. Guardado, 491 Mass. 666, 700
(2023) (Lowy, J., concurring), S.C., 493 Mass. 1 (2023), cert. denied 144 S.
Ct. 2683 (1994).  The prosecutor
commented, "Alternatively, we could ask for a stay of the trial and
satisfy [defense counsel] by calling in a bunch of other witnesses.
. . .  Or we could get a
computer with some Internet access and have Ms. Dunne run a CJIS query right
now.  Either way, the end result is the
same:  there is no record."  The Commonwealth did not offer the evidence
by either of those methods.  Instead, the
judge permitted Dunne to testify, over objection, that the defendant did not
have an LTC or an FID.  
      After the close of evidence, the judge
instructed the jury as to the Commonwealth's burden of proof regarding whether
the defendant was licensed to carry a firearm. 
The judge explained, "[t]here was no evidence in this case that the
defendant had [an LTC]. . . . 
For that reason, the issue of [an LTC or FID] . . . is not
relevant to your deliberations in this case, and therefore you . . .
must put it completely out of your mind." 
After a sidebar conversation during which both the prosecutor and the
defense counsel suggested that the judge should have informed the jury of the
Commonwealth's burden to prove that the defendant was not licensed to carry a
firearm, the judge reinstructed the jury: 
"the Commonwealth has to prove that the defendant did not have a
valid license to carry a firearm outside of their home or business and did not
have a right to carry a loaded firearm outside their home or
business."  
      The defendant was convicted of all the
firearm related offenses and he filed a timely notice of appeal.  The defendant submitted a motion for a new
trial arguing that his trial lawyer was ineffective for not moving to suppress
his incriminating admission that he did not have an LTC.  The judge issued an order denying the motion.  The defendant's appeal from his convictions
and his appeal from the judge's order denying his motion for new trial were
consolidated. 
      Discussion.  1. 
Firearm license evidence.  The
defendant submits that the judge erred by allowing Dunne's testimony that
searches of the CJIS database did not show that the defendant had an LTC or
FID.  The defendant argues that the
testimony violated the rule against hearsay and his right to confrontation
under the Sixth Amendment and art. 12 of the Massachusetts Declaration of
Rights.  
      "Out-of-court statements offered for
the truth of the matter asserted by a declarant who does not testify at trial
must pass two 'distinct but symbiotic' tests to be admitted."  Commonwealth v. Rand, 487 Mass. 811, 815
(2021), quoting United States v. Brito, 427 F.3d 53, 60 (1st Cir. 2005), cert.
denied, 548 U.S. 926 (2006). 
"First, the statement must be admissible under our common-law rules
of evidence as an exception [or exemption] to the hearsay rule.
. . .  Second, the statement
must be nontestimonial for purposes of the confrontation clause of the Sixth
Amendment."  Rand, supra, quoting
Commonwealth v. Beatrice, 460 Mass. 255, 258 (2011).  
      "The confrontation clause bars the
admission of testimonial hearsay by a declarant who does not appear at trial,
unless the declarant is unavailable to testify as a matter of law and the
defendant had an earlier opportunity to cross-examine him or her."  Commonwealth v. McGann, 484 Mass. 312, 316
(2020).  Where, as here, a defendant
objects to evidence that was admitted in violation of his or her constitutional
rights, we review "to determine whether it was harmless beyond a
reasonable doubt" (citation omitted). 
Commonwealth v. Wardsworth, 482 Mass. 454, 458 (2019). 
      a. 
Hearsay.  "Hearsay is a
statement, other than one made by the declarant while testifying at trial or
hearing, offered in evidence to prove the truth of the matter
asserted."  Commonwealth v. Randall,
50 Mass. App. Ct. 26, 27 (2000).  See
Mass. G. Evid. § 801(c) (2024).  The
judge allowed Dunne to testify that she had reviewed information from both
Ciccone and Conway showing that the defendant did not have and never had an LTC
or FID.  The first question for this
court is whether the information from Ciccone and Conway was hearsay and if so,
whether any exception allowed for Dunne to testify to it.[5]
      Although neither the printout that Ciccone
created of his search results nor Dunne's affidavit describing Conway's search
is in the record before us, see notes 3 and 4, supra, it is apparent from
Dunne's testimony that she was relying on the information gleaned from those
searches, which was being offered for its truth, i.e. that there was "no
record" of the defendant having an LTC or FID.  Thus, Dunne's testimony about the results of
the searches by Ciccone and Conway was hearsay.[6]  
      We conclude that the information gleaned
from the CJIS searches by Ciccone and Conway was hearsay and no exception
allowed for Dunne to testify to that information.[7]  
      b. 
Confrontation clause.  Even if the
results of Ciccone's and Conway's searches were admissible under some exception
to the hearsay rule, testimony about their contents would violate the
defendant's right to confrontation pursuant to the Sixth Amendment and art.
12.  A criminal defendant has the right
to confront the government's witnesses. 
See Bullcoming v. New Mexico, 564 U.S. 647, 658 (2011); Melendez-Diaz v.
Massachusetts, 557 U.S. 305, 309 (2009). 
See also Commonwealth v. Nardi, 452 Mass. 379, 388 n.10 (2008)
("the protection provided by art. 12 is coextensive with the guarantees of
the Sixth Amendment" [citation omitted]). 

      The confrontation clause of the Sixth
Amendment guarantees a defendant the opportunity to confront the declarant of
"testimonial" statements used against the defendant at trial, and to
do so by the "crucible of cross-examination."  Crawford v. Washington, 541 U.S. 36, 61
(2004).  These constitutional provisions
"prohibit[] the admission of testimonial statements unless the declarant
testifies at trial or is formally unavailable to testify and the defendant had
a prior opportunity to cross-examine the declarant."  Commonwealth v. Durand, 457 Mass. 574, 584
(2010); Melendez-Diaz v. Massachusetts, 557 U.S. at 309.[8]  
      In his concurrence in Guardado, 491 Mass.
at 701, Justice Lowy cited State v. Carrion, 249 N.J. 253, 272 (2021), for the
proposition that "although the underlying firearm license database was not
itself testimonial in character, the creation of a document attesting to a
search of that database for the purpose of prosecuting the defendant was."  In Carrion, supra at 272, the court
explained, "it is the creation of a document attesting to an
interpretation or search of that data -- for the sole purpose of prosecuting a
defendant -- that is testimonial."  
Other jurisdictions have reached similar conclusions.  See State v. Jasper, 174 Wash. 2d 96, 113
(2012) ("A substantial majority of courts have held since Melendez-Diaz v.
Massachusetts, [557 U.S. at 311,] that clerk certifications attesting to the
nonexistence of a public record are testimonial statements"). 
      We agree with the holding in Carrion.  The information from Ciccone and Conway that
Dunne relied on for her testimony in this case was not the raw data of the
firearm registry, but search results created for the purpose of prosecuting the
defendant.  See Commonwealth v.
Parenteau, 460 Mass. 1, 8 (2011) (where document is subsequently created by
agency to establish fact at trial, it is testimonial and violates confrontation
clause even though document is based on preexisting agency records).  Where the Commonwealth seeks to introduce the
testimonial results of a database search or analysis, it must, at a minimum,
offer testimony of the person who searched the database.  See Commonwealth v. Sullivan, 478 Mass. 369,
376-377 (2017).  Because Dunne was not
the person who conducted the searches, she could not testify about the results
of the searches or the information contained in the printout.  See id. at 376-377 (testimony regarding
deoxyribonucleic acid extraction and that profile matched person in national
database improperly admitted hearsay because those responsible for testing did
not testify and were not subject to cross-examination).  See also Carrion, 249 N.J. at 272 (testimony
improper because defendant "could not explore whether the officer used the
correct date of birth, name, or other identifying information such as a social
security number in order to generate a correct search of the database, and what
information that search produced"). 

      Dunne was not offering her own independent
interpretation of raw data produced by either Ciccone or Conway; instead, Dunne
served as a conduit through which the Commonwealth sought to convey to the jury
Ciccone's and Conway's statements regarding the results of their CJIS
queries.  And because the Commonwealth
did not establish that either Ciccone or Conway was unavailable nor provide the
defendant an opportunity to cross-examine either witness,[9] the defendant's
right to confront his accuser was violated. 
See Commonwealth v. Trotto, 487 Mass. 708, 731-732 (2021).  
      2. 
Harmless error.  a.  Firearm offenses.  Where a defendant objects to a constitutional
error, "we evaluate the admission of constitutionally proscribed evidence
to determine whether it was harmless beyond a reasonable doubt."  Rand, 487 Mass. at 814-815, quoting
Wardsworth, 482 Mass. at 458.  Dunne's
testimony was not the only evidence the Commonwealth relied on to prove that
the defendant lacked a firearm license. 
The jury also heard that the defendant admitted that "he did not
have [an LTC]."  However, "the
constitutional harmless error standard that governs a confrontation clause
violation is not satisfied simply because the erroneously admitted evidence is
cumulative of other properly admitted evidence."  Commonwealth v. Wilson, 94 Mass. App. Ct.
416, 432 (2018).  Indeed, "it is not
enough for the Commonwealth to demonstrate that its other, properly admitted
evidence was 'sufficient' to convict the defendant or that the inadmissible
evidence was 'consistent' with the admissible evidence."  Commonwealth v. Tyree, 455 Mass. 676, 701
(2010), quoting Commonwealth v. Dagraca, 447 Mass. 546, 554-555 (2006).  When evaluating whether an error is harmless,
we must decide "on the totality of the record before us, weighing the
properly admitted and the improperly admitted evidence together, whether we are
satisfied beyond a reasonable doubt that the tainted evidence did not have an
effect on the jury and did not contribute to the jury's verdicts"
(citation omitted).  Commonwealth v.
Gumkowski, 487 Mass. 314, 322 (2021).  To
assess the strength of the properly admitted evidence against the effect of the
erroneously admitted evidence,
"we examine
various factors, including the importance of the evidence in the prosecution's
case; the relationship between the evidence and the premise of the defense; who
introduced the issue at trial; the frequency of the reference; whether the
erroneously admitted evidence was merely cumulative of properly admitted
evidence; the availability or effect of curative instructions; and the weight
or quantum of evidence of guilt."  
Dagraca, supra at
553.
      As indicated, in addition to Dunne's
testimony to establish the element of a lack of a firearm license, the
Commonwealth also presented testimony from the arresting officer that the defendant
admitted he did not have an LTC. 
Although the officer's explanation of the defendant's admission
comprised only a single line of testimony, it directly established that the
defendant lacked an LTC.  Lengthier
testimony would not necessarily have yielded stronger evidence.  The defendant, moreover, did not dispute the
accuracy of the officer's testimony nor suggest that the officer lacked
credibility.  See Commonwealth v. Bookman,
492 Mass. 396, 401 (2023).  Lastly, the
prosecutor in his closing argument highlighted for the jury that the defendant
admitted to the arresting officer that he did not have an LTC.  
      We accordingly conclude that the
constitutional error of admitting hearsay regarding the lack of an LTC was
harmless beyond a reasonable doubt.  
      b. 
Ammunition charge.  The defendant
was also charged with possession of ammunition without an FID in violation of
G. L. c. 269, § 10 (h). 
"To convict a defendant of unlicensed possession of ammunition, the
Commonwealth must show that the defendant (1) possessed,
(2) ammunition designed for use in any firearm, and (3) without
complying with the FID card requirements as provided by the applicable
statute."  Commonwealth v. McCollum,
79 Mass. App. Ct. 239, 245 (2011).  
      Because the officer's demand and the
defendant's admission concerned only an LTC, Dunne's testimony was the only
evidence from which the jury could have found that the defendant lacked an
FID.  Without Dunne's testimony, the
Commonwealth could not establish the elements necessary to convict the
defendant of unlawful possession of ammunition. 
The prejudicial impact of Dunne's testimony that the defendant lacked an
FID was "too strong to be considered harmless."  Commonwealth v. Howard, 469 Mass. 721, 737
(2014), S.C., 479 Mass. 52 (2018). 
Accordingly, the defendant's conviction for possession of ammunition
must be vacated.  
      3. 
Jury instructions.  The defendant
argues that the judge's instructions regarding the Commonwealth's burden of
proving lack of licensure were erroneous and warrant reversal of the
defendant's conviction.  "Trial
judges are accorded considerable discretion in framing jury instructions, both
in determining the precise phraseology used and the appropriate degree of elaboration."  Commonwealth v. Newell, 55 Mass. App. Ct.
119, 131 (2002).  "We evaluate jury
instructions 'as a whole, looking for the interpretation a reasonable juror
would place on the judge's words'" (citation omitted).  Commonwealth v. Harris, 464 Mass. 425, 434
(2013).  
      After the judge's first instruction, the
prosecutor and defense counsel approached the judge at sidebar and agreed that
the instruction regarding the Commonwealth's burden to prove lack of licensure
did not comport with Guardado, 491 Mass. at 690-691, which was decided about a
month before the trial in this case. 
After the sidebar, the judge provided a corrected instruction that
accurately described the Commonwealth's burden of proof.  The defendant now argues that because the
judge provided an incorrect instruction before correcting himself and then
accurately instructing the jury, the instructions as a whole were
"ambiguous, confusing, and contradictory."  Commonwealth v. Allen, 474 Mass. 162, 166-167
(2016).  We do not agree.  The judge's instructions more closely
resemble those in Commonwealth v. Silva, 455 Mass. 503, 524-525 (2009), where
"[t]here was no repetitive oscillation between correct and incorrect
instructions, but a steady progression toward a correct and thorough
instruction."  The judge here also
repeatedly "emphasized that the Commonwealth bears the burden of proof
beyond a reasonable doubt on all the elements of the crime charged."  Commonwealth v. Lynch, 439 Mass. 532, 544,
cert. denied, 540 U.S. 1059 (2003).  The
judge's revised instruction adequately corrected the error in his first
instruction and properly conveyed to the jury the Commonwealth's burden of
proving that the defendant did not have a firearm license.  See Commonwealth v. Shelley, 411 Mass. 692,
697 n.4 (1992) ("if the challenged portions of the instructions contained
any error, the judge's final charge cured the error").
      4. 
Motion for new trial.  The
defendant filed a motion for new trial which alleged that his trial counsel was
ineffective for failing to file a motion to suppress his statement that he had
no LTC.  The defendant argues that the
police officer's demand amounted to "a show of authority with which a
reasonable person would feel compelled to comply" and that therefore the
defendant's admission was involuntary. 
Commonwealth v. Murphy, 63 Mass. App. Ct. 11, 19 (2005).  The motion for new trial was not supported by
any affidavit of the defendant averring that he felt compelled to comply with
the officer's demand, nor by any affidavit of trial counsel explaining his
reasons for not moving to suppress the defendant's statement.  "When weighing the adequacy of the
materials submitted in support of a motion for a new trial, the judge may take
into account the suspicious failure to provide pertinent information from an
expected and available source." 
Commonwealth v. Goodreau, 442 Mass. 341, 354 (2004).  
      "To prevail on a motion for a new
trial claiming ineffective assistance of counsel, a defendant must show that
there has been a 'serious incompetency, inefficiency, or inattention of counsel
—- behavior of counsel falling measurably below that which might be expected
from an ordinary fallible lawyer,' and that counsel's poor performance 'likely
deprived the defendant of an otherwise available, substantial ground of
defence.'"  Commonwealth v. Millien,
474 Mass. 417, 429-430 (2016), quoting Commonwealth v. Saferian, 366 Mass. 89,
96 (1974).  "In order to show that
counsel was ineffective for failing to file a motion to suppress evidence, the
defendant must show such a motion likely would have succeeded."  Commonwealth v. Buckman, 461 Mass. 24, 40
(2011), cert. denied, 567 U.S. 920 (2012). 
"In reviewing the denial or grant of a new trial motion, we
'examine the motion judge's conclusions only to determine whether there has
been a significant error of law or other abuses of discretion.'"  Commonwealth v. Weichell, 446 Mass. 785, 798
(2006), quoting Commonwealth v. Grace, 397 Mass. 303, 305 (1986). 
      We note that an ordinary, fallible lawyer
might have chosen not to move to suppress the defendant's statement, because
doing so would likely have focused the prosecutor's attention on the need to
lay a proper foundation for the searches of the CJIS database, as discussed
above.  See Commonwealth v. Serino, 436 Mass.
408, 413 (2002) (trial counsel strategically chose not to move to suppress
statements or seek voir dire on their voluntariness, where doing so would have
given police witnesses "opportunity to rehearse" testimony).  We need not pause to consider that issue,
because we agree with the motion judge, who was also the trial judge, that such
a motion would not have been successful. 

      A statement is presumed voluntary until a
defendant produces evidence showing otherwise. 
Commonwealth v. Tremblay, 460 Mass. 199, 206 (2011).  The only evidence the defendant produced at
the motion for new trial is that the police officer "demanded" the
defendant to produce an LTC.  He argues
that because of this request, the defendant's statement is involuntary.  We do not agree.
      A voluntary statement is "the product
of a rational intellect and a free will, and not induced by physical or
psychological coercion" (quotations and citations omitted).  Commonwealth v. Hammond, 477 Mass. 499, 502
(2017).  More specifically, "[t]he
test for voluntariness . . . is whether, in light of the totality of
the circumstances surrounding the making of the statement, the will of the
defendant was overborne to the extent that the statement was not the result of
a free and voluntary act" (quotations and citations omitted).  Id. 
"Under this 'totality of the circumstances' test, we consider all
of the relevant circumstances surrounding the interrogation and the individual
characteristics and conduct of the defendant" (citations omitted).  Id. 
"Factors that can be relevant to the determination of voluntariness
include the defendant's age, education, intelligence, emotional stability,
experience with the criminal justice system. . . .  However, the presence of one or more factors
suggesting involuntariness does not necessarily make a statement
involuntary" (citation omitted). 
Commonwealth v. Chilcoff, 103 Mass. App. Ct. 48, 53-54 (2023).
      It is true that the defendant was
handcuffed when the officer "demanded" his LTC, but that is not
dispositive.  See Commonwealth v.
Rodrigues, 104 Mass. App. Ct. 410, 412-416 (2024).  Here, there was no evidence that the
defendant's faculties were diminished by drugs or alcohol, that he was fearful
or distressed to the degree that he could not think clearly, that he had been
detained for a significant period of time, or that he lacked mental or
emotional maturity.  See id.;
Commonwealth v. Harris, 75 Mass. App. Ct. 696, 700 (2009).  To the contrary, the defendant was handcuffed
immediately after the officer stopped his car, he was "very
cooperative" with officers, and an officer demanded the defendant's LTC
within a few moments after he was handcuffed. 
None of these facts lend credence to the defendant's argument that his
admission was involuntary.  Contrast
Rodrigues, supra at 412-416 (production of physical evidence involuntary where
defendant was handcuffed and seated on curb of sidewalk for thirty to
forty-five minutes and his "surrender of the [evidence] was the
culmination of an increasingly skeptical and confrontational turn in the
officer's questioning of him").  
      The judge was correct to find that trial
counsel was not ineffective for failing to move to suppress the defendant's
admission that he did not have an LTC and therefore did not abuse his
discretion in denying the defendant's motion for a new trial.  See Commonwealth v. McWilliams, 473 Mass.
606, 619 (2016); Commonwealth v. Whitlock, 74 Mass. App. Ct. 320, 324 (2009).
      In his written order denying the
defendant's motion for a new trial, the judge stated that "Miranda
warnings . . . protect the integrity of a suspect's privilege against
self-incrimination."[10]  He further
stated that the privilege "does not permit a suspect to refuse to produce
real or physical evidence (such as a license) when lawfully ordered to do
so."  Consequently, the judge found
that "it would not have been fruitful for [trial counsel] to litigate this
issue."  On appeal, the defendant
argues that the judge erred by discussing Miranda, which the defendant contends
was not the basis for his argument in support of his motion for a new trial.
      While the judge mentioned Miranda in his
order, his reasoning focused on the defendant's broader right against
self-incrimination.  This comports with
the heart of the defendant's argument, which is based on the language from art.
12 stating that "No subject shall . . . be compelled to accuse,
or furnish evidence against himself." 
General Laws c. 140, § 129C, requires, in pertinent part, that
a person found with a firearm "shall on demand of a police officer
. . . exhibit his [LTC], or his [FID] or receipt for fee paid for
such card, or . . . a valid hunting license."  We conclude that the judge was correct to
consider Miranda as part of his analysis of whether the defendant's admission
was voluntary.  See Commonwealth v.
Selby, 420 Mass. 656, 663 (1995) ("Relevant factors [to a voluntariness
inquiry] include . . . the details of the interrogation, including
the recitation of Miranda warnings").
      The defendant also argues that defense
counsel was ineffective for failing to request a humane practice
instruction.  For voluntariness to be
considered a "live issue," to warrant a humane practice instruction,
"substantial evidence of involuntariness [must be] produced."  Commonwealth v. Gallett, 481 Mass. 662, 686
(2019).  There was no such evidence
produced and therefore no instruction was required and counsel was not
ineffective for failing to request one.
      Conclusion.  The defendant's convictions for carrying a
firearm without a license, G. L. c. 269, § 10 (a) and
possession of a loaded firearm, G. L. c. 269, § 10 (n) are
affirmed.  The conviction for unlawful
possession of ammunition is reversed, the verdict is set aside, and judgment is
to enter for the defendant.
So ordered.

footnotes

[1] The jury
convicted the defendant of carrying a firearm without a license, G. L.
c. 269, § 10 (a); possession of a loaded firearm, G. L.
c. 269, § 10 (n); and possession of ammunition without a firearm
identification card, G. L. c. 269, § 10 (h) (1).  The defendant was acquitted of operating a motor
vehicle with his license suspended, G. L. c. 90, § 23. 

[2] The defendant
also argues that the jury instructions were erroneous.  As discussed infra, we find no merit to that
argument.  In addition, this appeal has
been consolidated with the denial of the defendant's motion for new trial.  Therein, he argued that the trial judge erred
in denying his motion for new trial because his lawyer was ineffective for not
moving to suppress his incriminating admission that he did not have an LTC.  We also address this argument infra, and find
no error in the denial of the defendant's motion for new trial.  

[3] The printout
is not in the record before us.

[4] The affidavit
was not marked for identification and is not in the record before us.

[5] Because we
hold that Dunne's testimony relying on the information from Ciccone and Conway
is hearsay, we need not reach the issue whether the CJIS computer information
is also hearsay.  See Guardado, 491 Mass.
at 698 (Lowy, J., concurring) ("insofar as the witness testifies as to the
contents of computer-stored records, those records may constitute
hearsay).  See also Commonwealth v.
Royal, 89 Mass. App. Ct. 168, 169-173 (2016) (State police trooper's testimony
that he checked motor vehicle registry database and defendant's license was
listed as suspended was inadmissible hearsay because such records were
computer-stored . . .").

[6] Because
neither Ciccone's printout nor the affidavit setting forth the results of
Conway's search is in the record, we do not reach the questions whether either
of those documents would have been admissible as business or official
records.  However, we note that the
Commonwealth's argument at trial that the printout and the affidavit should be
admissible as business records misreads Justice Lowy's concurrence in
Guardado.  Justice Lowy cautioned that
for a witness to testify about the absence of an official record, a foundation
first must be laid showing the witness's "sufficient familiarity with how
the record was created, maintained, and accessed," and testimony "to
the contents of computer-stored records . . . may constitute
hearsay" unless the records are "properly certified."  Guardado, 491 Mass. at 698 (Lowy, J.
concurring), quoting Royal, 89 Mass. App. Ct. at 169-173 (2016).  See also Mass. G. Evid. §§ 803(10),
902(b) (2024).  On appeal, the
Commonwealth does not argue that any such foundation was laid here.  

[7] To meet the
requirements of admissibility, the Commonwealth must present non-hearsay
evidence or evidence within an exception to the hearsay rule.  "[T]he admission of properly
authenticated copies of preexisting firearms licensing records that were made
and kept in the ordinary course of business . . . are not
testimonial.  Such records might be used,
for example to show that a defendant's name did not appear in the record
. . . .  It is also conceivable,
depending on how the records are compiled, or may be compiled in the future in
response to this court's decision today, that a copy of an excerpted
alphabetical list of firearms licenses might reveal the absence of a license
held by a defendant."  Guardado, 491
Mass. at 703 (Lowy, J., concurring).

[8] "[T]o
meet the requirements of the confrontation clause, the Commonwealth would
likely have to present a witness who actually undertook a search of the
firearms licensing records and determined that the defendant lacked a
license."  Guardado, 491 Mass. at
702 (Lowy, J., concurring).  This witness
would of course need to show that the search was conducted using the
defendant’s correct name and date of birth. 
For example, without proof that the search was for
"Encarnacion" rather than "Encarnation," it would not be
relevant.

[9] In fact, on
cross examination Dunne testified that Ciccone was still employed by CJIS but
he was not in the office on the day of trial. 

[10] The evidence at trial did not establish whether
the defendant had been advised of his Miranda rights during the stop.